**In the Matter of the Administration by First National Bank and Kenneth Braaten, Co–Trustees of the Trust Created by Floyd Earl Sickles.**

**Ralph S. OLIVER, in his personal capacity and as Personal Representative of the Estate of Floyd Earl Sickles, Petitioner and Appellant,**

**and**

**First National Bank and Kenneth Braaten, Co–Trustees of the Trust Created by Floyd Earl Sickles, Petitioners,**

**v.**

**CITY OF LARIMORE and State of North Dakota ex rel. Office of Attorney General, Respondents and Appellees.**

**In the Matter of the Administration by First National Bank and Kenneth Braaten, Co–Trustees of the Trust Created by Lloyd Myrl Sickles.**

**Ralph S. OLIVER, in his personal capacity and as Personal Representative of the Estate of Lloyd Myrl Sickles, Petitioner and Appellant,**

**and**

**First National Bank and Kenneth Braaten, Co–Trustees of the Trust Created by Lloyd Myrl Sickles, Petitioners,**

**v.**

**CITY OF LARIMORE and State of North Dakota ex rel. Office of Attorney General, Respondents and Appellees.**

Civ. Nos. 950132, 950133.

Supreme Court of North Dakota.

Dec. 4, 1995.

Gregory C. Larson (argued), of Wheeler Wolf, Bismarck, and Harold J. Bergquist (argued), of The Bergquist Law Firm, Larimore, for petitioner and appellant.

Michael Juntunen (appearance), of Hamilton, Juntunen & Cilz, Grand Forks, for petitioners.

David W. Huey (argued), Assistant Attorney General, Bismarck, for respondents and appellees.

MESCHKE, Justice.

Ralph S. Oliver appealed from an order authorizing the co-trustees of the Lloyd and Floyd Sickles' trusts to pay some personal representative fees and related attorney fees from the trust assets, and denying payment of the balance of fees claimed. We modify the order to include reimbursement to Oliver for a $200.00 cash bond and, as modified, affirm the order.

In a prior appeal, *Matter of Conservatorship of Sickles*, 518 N.W.2d 673 (N.D.1994), we detailed the factual history of the litigation behind Oliver's claims for fees and expenses here. We repeat only those facts essential to explain the trial court's decisions on Oliver's claims for payment of fees.

Lloyd Sickles, and his twin bother, Floyd Sickles, who worked professionally in the performing arts many years, lived at Larimore and owned substantial property. Neither brother married, and they had no living relatives.

In 1988, the Sickles brothers asked attorney Ralph Oliver to prepare wills for each of them that would take care of the survivor during the rest of his life, and then gift the remaining assets upon his death to fund theater and art activities in the Larimore area. Oliver prepared, and the brothers executed, wills naming a non-profit corporation created by Oliver, the Sickles Foundation, as the residuary beneficiary of the Sickles' estates to administer for general charitable purposes. Oliver was nominated personal representative for the estates and was also designated the Foundation's registered agent. Oliver's legal associate was appointed to the Foundation's three-member board of directors, and Oliver's legal assistant was appointed secretary for the Foundation.

In 1992, after the brothers' health failed and conflicting conservatorship proceedings, the Grand Forks County Court appointed Kenneth Braaten, the Grand Forks County Public Administrator, as conservator and guardian for them. Braaten investigated the brothers' assets and came to believe that the Sickles Foundation was shrouded in secrecy and lacked the appearance of independent management. Braaten decided it would be best to place the brothers' property in revocable living trusts: (1) to insure sufficient assets to provide for Lloyd and Floyd during their lifetimes; (2) to insure remaining assets would be used for the charitable purposes intended by the brothers; and (3) to minimize adverse tax consequences, thereby making more assets available for those charitable purposes. On Braaten's petition, the county court approved creation of the revocable living trusts and the transfer of the brothers' property to the trusts. Lloyd died soon after, and Floyd died in August 1993.

Designated as the personal representative in the brothers' wills, Oliver moved to vacate the living trusts. *See* NDCC 30.1–18–01 ("The powers of a personal representative relate back in time to give acts by the person

appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter."). After hearing, the trial court denied the motion. After he was appointed personal representative for Lloyd's estate, Oliver again petitioned to vacate and avoid both trusts. The trial court again denied relief.

Oliver appealed from both orders sustaining the trusts. He retained the Wheeler Wolf Law Firm for the appeal of the order denying his first motion to vacate. He retained the Bergquist Law Firm for the appeal from the orders denying the second set of motions and petitions. The appeals were consolidated "because both focus[ed] on the validity of the trial court's order allowing creation of the revocable living trust[s]." *Matter of Conservatorship of Sickles*, 518 N.W.2d at 677. In that decision, we upheld the trial court's orders, concluding the trial court did not abuse its discretion in approving the creation of the living trusts to protect the brothers' charitable intentions.

Oliver thereafter requested the trustees to pay from trust assets his fees and expenses, including the attorney fees of the Wheeler Wolf Law Firm and of the Bergquist Law Firm in conducting the appeals. The Sickles' trusts expressly authorize the trustees to pay from trust assets the reasonable expenses of administration, including attorney fees, of the estates of the trust grantors, Lloyd and Floyd Sickles. The trustees, Kenneth Braaten and First National Bank, then petitioned the court to consider Oliver's request and to determine what should be paid by the trustees from the trust assets.

Oliver sought $23,861.28 to reimburse: (a) attorney fees for the Wheeler Wolf Law Firm of $10,800.83; (b) attorney fees for the Bergquist Law Firm of $9,972.45; and (c) Oliver's personal representative fees and other expenses totaling $3,088.00. The trial court denied all attorney fees for the Wheeler Wolf Law Firm, approved attorney fees for the Bergquist Law Firm of $8,584.45, and approved personal representative fees and expenses for Oliver of $314.00, for payment by the Sickles' trusts.

Oliver appealed. Oliver asserts the trial court abused its discretion in denying the Wheeler Wolf Law Firm attorney fees and in reducing the attorney fees of the Bergquist Law Firm.

■■■ The Uniform Probate Code, as adopted in North Dakota, authorizes payment from estate assets of expenses and attorney fees incurred by a personal representative during litigation:

*Expenses in estate litigation.*—If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements, including reasonable attorneys' fees incurred.

NDCC 30.1–18–20. This reimbursement is authorized only when the personal representative "retains counsel which is necessary for the benefit of the entire estate," and is frequently disallowed if the legal services are performed "primarily for the personal interest of the personal representative and not for the benefit of the estate as a whole." *Matter of Estate of Rohrich*, 496 N.W.2d 566, 571 (N.D.1993). We will not reverse a trial court's determination on attorney fees absent a clear abuse of discretion. *Matter of Estate of Ridl*, 455 N.W.2d 188 (N.D.1990). As *Matter of Conservatorship of Kinney*, 495 N.W.2d 69 (N.D.1993), explains, a trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably.

■■ The trial court decided the litigation handled by the Wheeler Wolf Law Firm primarily benefited Oliver personally, not the Sickles' estates, and disallowed that claim. Oliver complains the trial court misapplied the statute by making benefit to the trusts, rather than the brothers' estates, a prerequisite to reimbursement of the attorney fees. We are not persuaded. Although the court, in its memorandum decision, said the prior litigation did not benefit the Sickles' trusts, the court denied reimbursement for the Wheeler Wolf legal services because the litigation was brought primarily to benefit Oliver personally and not to preserve the brothers' assets or to fulfill their intended charitable intentions.

■ For reimbursement of attorney fees and costs under NDCC 30.1–18–20, the personal representative must act in good faith, his conduct must be free from fraud, and he must have benefitted the estate. *Matter of Estate of Honerud*, 326 N.W.2d 95 (N.D. 1982). The Editorial Board Comments with that section expressly say, "litigation prosecuted by a personal representative for the primary purpose of enhancing his prospects for compensation would not be in good faith." Oliver urges that benefit to the estates can be found in the personal representative's good faith attempts to effectuate the testamentary intention of a facially valid will. *See Matter of Estate of Flaherty*, 484 N.W.2d 515 (N.D.1992). However, there was evidence in the litigation to support the trial court's finding that Oliver, when he attacked the trusts' creation, was acting primarily to benefit his own interests.

Evidence for that finding was summarized in *Matter of Conservatorship of Sickles:*

> Although the Sickles Foundation was not made a party, its president and Oliver's former legal associate, Williams, filed an affidavit stating that after the corporation was formed, Oliver said he intended to sell nine quarters of farmland as personal representative of the brothers' estates. Williams stated this would be against the brothers' "general intent and a betrayal of their trust" and "would not be in the best interest of Sickles Foundation, especially because ... Oliver would do it, in my opinion, to place large commissions in his own pocket to the detriment of the estates and [Sickles Foundation]."

518 N.W.2d at 676–677. (Ellipses and bracket in original). On the other hand, the trial court found the Bergquist Law Firm did not represent Oliver in his capacity as personal representative of the estate:

> The only significant difference that this Court finds is that the Bergquist Law Firm represented the interests of the estate as designed in Lloyd's will, whereas Wheeler Wolf represented Oliver in his attack on the Trust. While both firms did attack the legitimacy of the Trust, the Bergquist Law Firm did so in fulfillment of its fiduciary duties to the Estate.

Where the Bergquist Law Firm was defending the interests of the Estate against those of the Trust, the Wheeler Wolf Firm represented the interests of Oliver personally against those of the Trust.

■ Oliver concedes the main questions in the two appeals, one handled by the Wheeler Wolf Law Firm and the other by the Bergquist Law Firm, "are basically identical," and agrees with the trial court's observation that the briefs submitted by the two law firms were "remarkably similar." Employment of multiple attorneys by a personal representative is viewed with disfavor, but ultimately depends on the facts of each case. *See Matter of Estate of Flaherty*, 484 N.W.2d at 520. Oliver failed to persuade the trial court that two sets of lawyers were necessary to represent the estate interests in attacking the trusts. The trial court's conclusion, that the Wheeler Wolf Law Firm represented Oliver's personal interests while the Bergquist Law Firm represented the estate interests, plausibly and reasonably explains why Oliver used two law firms to litigate the single question of the trusts appropriateness. Oliver has not offered a more reasonable and plausible explanation. We are not persuaded the trial court's reasons for denying reimbursement of the Wheeler Wolf Law Firm attorney fees and for approving reimbursement of the Bergquist Law Firm attorney fees were arbitrary, unconscionable, or unreasonable.

■ Oliver also argues that the trial court abused its discretion by refusing to approve reimbursement of the total Bergquist Law Firm claim of $9,972.45. Of that amount, $1,388.00 was for Harold Bergquist's travel and time spent discussing the case with various persons. The court disallowed this $1,388.00 because it was "unable to find that Harold Bergquist did anything to benefit the Estate or to even assist in the mechanics of an appeal."

■ For reasonable attorney fees, there is an implicit requirement that the attorney must render some necessary or beneficial legal service to the estate. *Matter of Estate of Vertin*, 381 N.W.2d 199 (N.D.1986). A trial court is considered an expert in as-

sessing the value of attorney fees. *Matter of Estate of Ridl,* 455 N.W.2d at 194. An abuse of discretion by the trial court is never assumed and must be affirmatively established. *Matter of Estate of Vertin,* 381 N.W.2d at 200. We conclude Oliver has not demonstrated the trial court abused its discretion in reducing the Bergquist Law Firm claim to $8,584.45.

 Oliver also claims the trial court abused its discretion in reducing his personal representative fees. A personal representative is entitled to reasonable compensation for his services to the estate, the decision about what is reasonable is left to the sound discretion of the trial court, and the decision will not be overturned absent an abuse of discretion. *Matter of Estate of Flaherty,* 484 N.W.2d at 520–21. As NDRCivP 52(a) decrees and *Estate of Kjorvestad,* 375 N.W.2d 160, 170 (N.D.1985), illustrates, the court's underlying findings of fact in setting reasonable compensation for a personal representative will be upheld unless clearly erroneous.

Oliver claimed fees of $2,880.00 for 30.4 hours of work at $95.00 per hour. The trial court allowed Oliver 15.7 hours at $20.00 per hour, totaling $314.00. The court based its $20.00 rate on evidence that the Bergquist Law Firm generally bills personal representative fees at a rate of $10.00 to $20.00 per hour in estates that it represents. Oliver's claim of $95.00 per hour reflected the rate he usually charges for attorney services. The trial court reasoned that Oliver employed legal counsel to assist with the estate activities and that Oliver did not show his services were rendered as an attorney.

The court also concluded that 14.7 hours of services claimed by Oliver did not contribute any benefit whatsoever to the estate. The disallowed hours were 6.7 hours of conferences with Harold Bergquist and another 8 hours billed as a block of time vaguely described as "Conf re: matters pertain. to probate and such other matters with staff as pertinent." The trial court's findings, that Oliver's services were rendered in his capacity as the personal representative, not as an attorney, and that only 15.7 hours of the 30.4 billed hours "can be reasonably traced to a benefit for the Estate," are not clearly erroneous. Consequently, we conclude the court did not abuse its discretion in reducing Oliver's fees to $314.00.

Oliver also claimed reimbursement for a $200.00 cash bond he paid for as the personal representative. The trial court recognized that item and made no reference to disallowing it in its memorandum decision. The failure to include the $200.00 cash bond in the court's order appears to be an oversight, not intended by the court. Consequently, we modify the order to include reimbursement from the trusts for the $200.00 cash bond.

In accordance with this opinion, the trial court's order approving fees is modified to include reimbursement to Oliver for a $200.00 cash bond, and, as modified, is affirmed.

VANDE WALLE, C.J., LEVINE and NEUMANN, JJ., and RONALD L. HILDEN, District Judge, concur.

RONALD L. HILDEN, District Judge, sitting in place of SANDSTROM, J., disqualified.