2000 SD 7

**ESTATE OF John KLAUZER, Deceased.**

**Nos. 20921, 20997.**

Supreme Court of South Dakota.

Argued Nov. 30, 1999.

Decided Jan. 12, 2000.

Keith R. Smit and Candi Thomson of Morman Law Firm, Sturgis, South Dakota, for appellant Frank Klauzer.

Brad P. Gordon of Fuller, Tellinghuisen, Gordon & Percy, Spearfish, South Dakota, for appellees Douglas Olson and Fern Olson.

E. James Hood and Lester Nies of Richards, Hood & Nies, Spearfish, South Dakota, for appellees William Hollister and Shirley Hollister.

SABERS, Justice

[¶ 1.] Frank Klauzer, personal representative of John Klauzer's estate, appeals: (1) the Order of distribution of the estate in sixteen equal shares; (2) the denial of claimed compensation and reimbursement for expenses; and (3) a subsequent Order denying Frank the authority to appeal on behalf of the estate. We affirm.

## FACTS

[¶ 2.] On March 26, 1993, Frank was appointed to act as Guardian and Conservator for his brother, John, who had suffered a severe stroke. In this capacity, Frank was required to inventory, account and manage the property of John and provide an annual accounting of John's estate. Frank was compensated for those services.

[¶ 3.] On September 9, 1996, John passed away. His estate was valued at $1.4 million. Pursuant to John's will, Frank was appointed personal representative of the estate on October 11, 1996. Wade Klauzer, John's nephew, petitioned for supervised administration and the trial court ordered the same.

[¶ 4.] John's will, dated August 30, 1990, disposed of the majority of his estate in the following residuary clause:

THIRD: I hereby give, devise and bequeath unto my brother, Thomas Klauzer, my sister, Agnes Blake, my sister, Anna Malenovsky Baker, my brother, Raymond Klauzer, my niece, Jenny Culver, my niece, Judy Klauzer, my niece, Bernice Cunningham, my nephew, Wade Klauzer, my nephew, Jim Klauzer, my niece, Debra Klauzer, friends, Douglas Olson and Fern Olson, and my friends, William Hollister and Shirley Hollister, my brother, Frank Klauzer, and my sister-in-law, Patricia Klauzer, all of my property of every kind and character and wheresoever situated, in equal shares, share and share alike. That

should any of the individuals above named predecease me, then their share of my estate shall go to their decedent's [descendant's] [1] surviving.

[¶ 5.] On December 22, 1998, the trial court ordered that (1) the residuary clause be distributed in sixteen equal shares and that (2) Frank be compensated for his services and expenses in the amount of $11,000. Frank petitioned the trial court requesting (3) authorization to appeal the decision on behalf of the estate, which was denied. Frank appeals all three issues in his personal capacity.

[¶ 6.] **1. WHETHER THE TRIAL COURT ERRED IN DIVIDING THE ESTATE IN SIXTEEN EQUAL SHARES INSTEAD OF FOURTEEN.**

[¶ 7.] Frank argues that the twelve Klauzer relatives named in clause number three should take one share each while friends, Doug and Fern Olson and William and Shirley Hollister, should receive one share per couple resulting in a $\frac{1}{14}$th division of the estate. He relies heavily on what he terms the "grammatical geometrics" of the clause to support his contention: i.e., (1) the placement of the commas between the names of the devisees and the indication of relationship for the twelve heirs, but not for Olsons and Hollisters; (2) the word "and," which connects the spouses' names, is claimed as evidence that John intended for each couple to receive one share; and (3) his claim that in his previous will, John referred to his relatives individually and to his friends collectively as married couples which evidenced his continued intention to treat his married friends as one unit, not as individuals.

[¶ 8.] On the other hand, Olsons and Hollisters argue that all named individuals should take in equal shares resulting in a $\frac{1}{16}$th division of the estate. For support, they point to John's will which: (1) refers

---

**1.** The will uses the word "decedent's" when it should have used "descendant's." From here on, we will replace the word "decedent's" with [descendant's].

to all sixteen heirs as "individuals"; (2) indicates that if any of the "individuals above named" predecease him, their share is to go to their "[descendant's] surviving"; and (3) provides that the named parties are to receive his property "in equal shares, share and share alike." They further argue that if John intended to treat them as two units, he would have repeated the exact language he used in his previous will. Instead, he materially altered his language which indicated his later intention to treat them as four individuals instead of two units.

 [¶ 9.] Our goal in interpreting a will is to discern the testator's intent. If the intent is clear from the language used, that intent controls. However, "[i]f ... doubt remains as to decedent's intent, the language used and the circumstances surrounding the execution of the writing will again be examined in light of pertinent rules of construction." *In re Estate of Nelson*, 250 N.W.2d 286, 288 (S.D.1977) (citations omitted). Our inquiry is limited to what the testator meant by what he said, not what we think the testator meant to say. *In re Trust of Cross*, 551 N.W.2d 344, 346 (Iowa Ct.App.1996) (citation omitted).

 [¶ 10.] In determining whether testamentary language is ambiguous, we have stated: "Language is ambiguous when it is reasonably capable of being understood in more than one sense." *In re Estate of Jetter*, 1997 SD 125, ¶ 20, 570 N.W.2d 26, 30–31 (quoting *In re Estate of Olson*, 332 N.W.2d 711, 713 (S.D.1983) (citation omitted)). " '[A]n ambiguity is not of itself created simply because the parties differ as to the interpretation of the [will].' " *Id.* 1997 SD 125, ¶ 20, 570 N.W.2d at 31. (quoting *City of Watertown v. Dakota, Minnesota & Eastern RR Co.*, 1996 SD 82, ¶ 21, 551 N.W.2d 571, 576 (quoting *Johnson v. Johnson*, 291 N.W.2d 776, 778–79 (S.D.1980))). "This [c]ourt reviews [the interpretation of] a will de novo, with no deference given to the trial court's interpretation." *Id.* (citing *In re Estate of*

*Bol*, 429 N.W.2d 467, 470 (S.D.1988)). "All the words and provisions appearing in [a] will must be given effect as far as possible, and none should be cast aside as meaningless." *Id.* (quoting *In re Estate of Bock*, 85 S.D. 113, 177 N.W.2d 734, 735 (S.D. 1970)). Extrinsic evidence is admissible to clarify any ambiguity. *In re Estate of Brown*, 559 N.W.2d 818, 822 (ND 1997); *In re Estate of Rogers*, 473 N.W.2d 36, 39 (Iowa 1991).

 [¶ 11.] The third clause in John's will, as set forth above, names each individual followed by their relationship to John. Olsons and Hollisters are referenced as follows: "friends, Douglas Olson and Fern Olson, and my friends, William Hollister and Shirley Hollister...." Each spouse is named as an individual. They are not referred to as "Mr. and Mrs. Olson" nor as "William and Shirley Hollister."

[¶ 12.] The clause contains other language to support the position that John intended that his estate be divided sixteen ways versus fourteen ways. After naming all sixteen individuals, the clause provides that they should receive his property "in equal shares, share and share alike. That should any of the *individuals* above named predecease me, then their share of my estate shall go to their [descendant's] surviving."

[¶ 13.] First, John refers to his friends as individuals. Second, he requests that they receive his property "in equal shares, share and share alike." *See In re Estate of Nagl*, 408 N.W.2d 768, 771 (Iowa Ct. App.1987) (holding that the language "equally share and share alike" indicates an intention to make a per capita distribution or an equal division among the number of individuals named). Third, he states that if one individual predeceases him, his or her share "shall go to their [descendants] surviving." In this regard, it is important to point out that married couples may have different descendants.

[¶ 14.] We· determine that the testator's intent is clearly expressed within the four corners of the document. We are bound by the unambiguous language of the will. Therefore, extrinsic evidence is not needed. However, even the extrinsic evidence supports our decision.

[¶ 15.] Compare the language used by John in his prior will, which was executed in 1985:

I. To my friends, Douglas and Fern Olson, of Newell, South Dakota, or the survivor of them, if either predecease me . . . .

J. To my friends, William or Shirley Hollister, of Redig, South Dakota, or the survivor of them, if either predece[a]ses me . . . .

It is undisputed that John, in his 1985 will, treated these married parties as one unit and not as individuals.[2] If John intended to continue treating the married parties as one unit, he could have used the same language. However, John materially altered the language in his 1990 will. He changed the word "or" to "and" indicating an intention that each spouse be treated individually. He also provided both the first and last name of each spouse, rather than both of the spouses' first names and only one last name. He also eliminated the words "or the survivor of them," all of which supports the argument that he intended to give each of them an equal share instead of treating the married couple as a unit, as he did in 1985.

[¶ 16.] During oral argument, Frank's attorney acknowledged that he prepared the 1990 will. As attorney for Frank, the personal representative of the estate, the attorney did not testify to the intention of John, despite the fact that he may be the sole surviving witness able to testify to John's intentions. As an attorney prosecuting the case, he could not testify and continue as an attorney under the Rules of Professional Conduct. In other words, he can not testify to the merits of the issue and continue as an attorney in the case.[3]

[¶ 17.] In South Dakota, we recognize and use the "adverse inference rule." This rule provides that if a party has evidence under its control and does not present that evidence, an inference may be drawn that the evidence would not support that party's claim. *Amert v. Lake County Bd. of Equalization*, 1998 SD 66, ¶ 28, 580 N.W.2d 616, 621 (quoting *Sabhari v. Sapari*, 1998 SD 35, ¶ 14, 576 N.W.2d 886, 891, n. 6 (quoting *Matters v. Custer County*, 538 N.W.2d 533, 536 (S.D.1995))). *See also Klinker v. Beach*, 1996 SD 56, ¶ 15, 547 N.W.2d 572, 576, n. 2 (stating that because a relevant document was not offered in support of any claims made by the plaintiff, the court will "assume it would not provide such support") (citing *Matters*, 538 N.W.2d at 536). Accordingly, we assume that the testimony of the attorney who drafted this will would not support Frank's position that John intended to divide his estate into 14 equal shares.

[¶ 18.] The structure and language of the clause itself, including the material changes from the 1985 will, convince us that John intended to leave one share to Douglas Olson, one share to Fern Olson, one share to William Hollister and one share to Shirley Hollister. Therefore, we

---

2. Frank concedes that John treated these married parties as couples and not as individuals in the 1985 will. Frank argues, however, that this supports his argument that John intended for the estate to be divided into 14 equal shares in the 1990 will. We disagree.

3. Rule 3.7 of the Rules of Professional Conduct provides:

(a) A lawyer or another lawyer in the lawyer's firm shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case;

(3) disqualification of the lawyer would work substantial hardship on the client; or

(4) except as otherwise provided by statute.

affirm the trial court's order to distribute the estate in sixteen equal shares.

**[¶ 19.] 2. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING FRANK'S REQUEST FOR COMPENSATION OF $27,250.00 AS PERSONAL REPRESENTATIVE.**

[¶ 20.] Frank petitioned for $27,250.00 as compensation as personal representative, based on the adjusted value of the estate of $1,086,600.[4] In support, he claimed he expended: (1) 416 hours to the administration of the estate and (2) 80 hours to prepare for an estate sale, plus (3) 4,350 miles on his car, (4) $260 in telephone expenses and (5) $100 in fax expenses, all for estate matters. Pursuant to SDCL 29A-3-719(c), he claims $27,250 as follows:

| | | |
|---|---|---|
| $0.00 to $1,000.00 – | 5% | = $50.00 |
| $1,000.00 to $5,000.00 – | 4% | = $160.00 |
| $5,000.00 to $1,086,600.00 – | 2.5% | = $27,040.00 |
| | Total | = $27,250.00 |

Based on the factors set forth in SDCL 29A-3-719(a), the trial court awarded Frank $11,000.00, which includes compensation and reimbursement of expenses. Frank argues that SDCL 29A-3-719(a) does not apply and he is entitled to a commission under SDCL 29A-3-719(c).

[¶ 21.] Interested heirs objected to Frank's petition and argue that $27,250.00 is excessive. They claim that given Frank's prior obligations and services as John's Guardian and Conservator, for which he was already compensated, the estate should have been easy to administer. Furthermore, neither the hours nor the miles claimed by Frank for the estate were documented.

[¶ 22.] Statutory interpretation is a question of law, which we review de novo. *Moss v. Guttormson,* 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17 (quoting *U.S. West*

*Communications, Inc. v. Public Utilities Comm'n,* 505 N.W.2d 115, 122–23 (S.D. 1993)).

[¶ 23.] SDCL 29A-3-719(a) and (c) provide:

(a) *Personal representatives, attorneys, accountants, appraisers, and other agents of the personal representative are entitled to reasonable compensation for services.* Reasonable compensation may include compensation for the services of the agents or employees of the person seeking compensation and may also include reimbursement for costs advanced. A determination of reasonable compensation shall be based on the following factors:

(1) The time and labor involved;

(2) The novelty and difficulty of the questions involved, and the skill requisite to perform the service properly;

(3) The likelihood that the acceptance of the particular employment will preclude other employment by the person;

(4) The fee customarily charged in the locality for similar services;

(5) The nature and value of the assets of the estate, the amount of income earned by the estate, and the responsibilities and potential liabilities assumed by the person;

(6) The time limitations imposed by the circumstances; and

(7) The experience, reputation, diligence, and ability of the person performing the services.

\* \* \*

(c) When compensation is not provided by will, or in an intestate proceeding, *the personal representative may be allowed commissions upon the amount of per-*

---

4. The adjusted value of the estate of $1,086,600 was arrived at by Frank subtracting his proposed compensation, $27,250, from the amount reported for South Dakota Inheritance Tax of $1,402,850. Substantial real property was deeded by John to Frank during John's lifetime subject to John's life estate valued at $289,000. The amount of the life estate of $289,000 was also subtracted as a remainder interest resulting in the adjusted value of the estate of $1,086,600.

sonal property accounted for by the personal representative, excluding personal property not ranked as assets, as follows:

(1) On the first one thousand dollars at the rate of five percent;

(2) On all sums in excess of one thousand dollars and not exceeding five thousand dollars at the rate of four percent;

(3) On all sums in excess of five thousand dollars at the rate of two and one-half percent.

Upon all real property accounted for by the personal representative, the personal representative shall receive a just and reasonable compensation for the services performed to be fixed by the court. All real estate sold by the personal representative as part of the proceedings in probate shall be considered as personal property.

(emphasis added).

[¶ 24.] SDCL 29A–3–719(a) and SDCL 29A–3–719(c) co-exist. Subsection (a) requires that personal representatives receive reasonable compensation for their services, while alternatively, subsection (c) *allows* the personal representative to receive a commission based on the value of personal property. Contrary to Frank's argument, subsection (a) is not restricted to agents of the personal representative or *additional* compensation to the personal representative. The statute, on its face, provides reasonable compensation for personal representatives. SDCL 27A–3–719(a).

[¶ 25.] As indicated, compensation for personal representatives may alternatively be calculated under subsection (c). However, subsection (c) does not mandate, as Frank claims, that commissions based on percentages of amounts must be paid to the personal representative. It is permissive: "the personal representative *may* be allowed commissions. . . ." SDCL 27A–3–719(c) (emphasis added). Thus, if the trial

court chooses to authorize such a commission, it may do so, but it is not required.

[¶ 26.] A personal representative is, of course, entitled to reasonable compensation for his services pursuant to SDCL 29A–3–719(a). In determining the amount, the trial court must consider the seven factors set forth in SDCL 29A–3–719(a). However, the determination of reasonable is left to the sound discretion of the trial court, and the decision will not be reversed absent an abuse of discretion. *See In re Estate of Musso*, 932 P.2d 853, 857 (Colo.Ct.App.1997) (citation omitted).

[¶ 27.] In this case, the trial court considered the factors set forth in SDCL 27A–3–719(a):

As Personal Representative, Frank Klauzer managed an estate valued at more than 1.4 million dollars for more than two years. However, having served more than three years as guardian and conservator, he would have acquired the skill to perform the services properly and there should have been few questions that were novel or difficult. He admits that his service as Personal Representative did not preclude other employment. The fee he requests is the same as the fee customarily charged at a commercial establishment in the locality for similar services. He assumed certain significant responsibilities and potential liabilities. He performed his tasks with reasonable diligence.

The trial court found that the 496 hours expended and the 4,350 miles driven as claimed were not documented. Consequently, the trial court was not persuaded to authorize the $27,250 requested. Instead, it awarded $11,000, apparently based upon $20 per hour and $0.24 per mile.

[¶ 28.] Frank failed to show that the trial court abused its discretion. The fact that Frank served as John's Guardian and Conservator for the three years immediately preceding John's death tends to negate the argument that a high level of skill or ex-

tended hours was required for the administration of this estate. As indicated, Frank was already compensated for the performance of his services as Guardian and Conservator. Therefore, the award of $11,000 is affirmed.

### [¶ 29.] 3. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING FRANK'S PETITION TO APPEAL ON BEHALF OF THE ESTATE.

[¶ 30.] Frank argues that his appeal of the interpretation of the will (Issue 1) is in the best interest of the estate and that the estate should be responsible for the expenses associated with that issue during this appeal.

[¶ 31.] The position of the interested heirs is that the personal representative principally stands to gain or lose on that issue and should be held personally accountable for those expenses as well as the expenses attributed to Issues 2 and 3 dealing with compensation of the personal representative.

[¶ 32.] SDCL 29A–3–720 provides:

Any personal representative or person nominated as personal representative who defends or prosecutes any proceeding in good faith, whether successful or not, is entitled to receive from the estate necessary expenses and disbursements including reasonable attorney's fees. The court may also award necessary expenses and disbursements, including reasonable attorney's fees, to any person who prosecuted or defended an action

that resulted in a substantial benefit to the estate.

This statute allows the personal representative to be reimbursed for "necessary expenses and disbursements" as long as the prosecution or defense of the proceeding was in "good faith."

[¶ 33.] We have not had the opportunity to interpret the language "good faith" as used in this statute. However, this statute, enacted in 1994, originated from the Uniform Probate Code. The pertinent comments of the Editorial Board therein provide: "[l]itigation prosecuted by a personal representative for the primary purpose of enhancing his prospects for compensation would not be in good faith." UPC 3–720, Official Comment.[5] *See also* 31 AmJur2d *Executors and Administrators* 457, n. 14 (quoting this comment). Other states have also spoken on the issue.

[¶ 34.] The North Dakota Supreme Court held that in order to get reimbursement under the good faith standard, the conduct of the personal representative "must be free from fraud, and he must have benefited the estate." *Oliver v. City of Larimore,* 540 N.W.2d 630, 634 (N.D. 1995). *Oliver* also stated that reimbursement of expenses under NDCC 30.1–18–20[6] is authorized when the personal representative " 'retains counsel which is necessary for the benefit of the entire estate,' and is frequently disallowed if the legal services are performed 'primarily for the personal interest of the personal representative and not for the benefit of the estate as a whole.' " *Id.* at 633 (quoting *In re*

---

5. We recognize that the South Dakota Legislature did not enact the Official Comments, but we have used them in the past as persuasive evidence of the intention of the text. *See, e.g., Continental Grain Co. v. Heritage Bank,* 1996 SD 61, ¶ 23, 548 N.W.2d 507, 512 (using the Official Comment to UCC 2–507 to clarify SDCL 57A–2–507); *Thomas v. McNeill,* 448 N.W.2d 231, 236–37 (S.D.1989) (analyzing an Official Comment to UCC 1–103); *Sanborn County Bank, Inc. v. Magness Livestock Exchange, Inc.,* 410 N.W.2d 565, 568 (S.D.1987) (Miller, Chief Justice, concurring in result) (stating the Official Comments "are not the

law in this state although we may look to them for guidance").

6. NDCC 30.1–18–20 provides:

If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, the personal representative or nominee is entitled to receive from the estate necessary expenses and disbursements, including reasonable attorneys' fees incurred.

*Estate of Rohrich,* 496 N.W.2d 566, 571 (N.D.1993)).

[¶ 35.] The Nebraska Supreme Court defined "good faith" as "honesty in fact concerning conduct or a transaction," and stated "[g]ood faith is distinguished from mere negligence or an honest mistake." *In re Estate of Watkins,* 243 Neb. 583, 501 N.W.2d 292, 296 (1993) (citations omitted). The *Watkins* court also stated: "[t]he record contains nothing to indicate that Roberts intentionally caused a loss to the Watkins estate or to any Watkins heir or prolonged litigation in an effort to increase the eventual compensation allowed by the county court." *Id.* at 297.

[¶ 36.] In denying Frank's petition for authorization to proceed with this appeal, the trial court implicitly found that this appeal was not being pursued in good faith. We agree. This appeal does not substantially benefit the estate itself:

> 'Estate' includes the property of the decedent, trust, or other person whose affairs are subject to this code as originally constituted and as it exists from time to time during administration.

SDCL 29A–1–201(14). Nor does this appeal benefit all of the distributees:

> The test of whether an attorney has benefited an estate by rendering services ... is *whether the distributees of the estate, in their capacities as such, have become entitled to receive greater sums from the assets of the estate* during administration than those that might have been expected without the applicant's efforts.

31 AmJur2d *Executors and Administrators* 457 (emphasis added). It is clear that fourteen distributees, including Frank, would have benefited from a reversal on appeal. However, there is no reversal on this appeal. It appears that Frank's primary concern is his own financial gain and this appeal is principally to increase his own share and compensation and not an effort to substantially benefit the entire estate. *See Oliver,* 540 N.W.2d at 633; *Watkins,* 501 N.W.2d at 297. Even if we had reversed on Issue 1, which we do not, the increase in each of the fourteen shares would only be approximately $9,850, less their share of attorney's fees, costs of administration and expenses.[7] Even more crucial to this analysis is the fact that the chances for reversal of Issue 1 were slim at best, given the language of the wills. Consequently, we agree with the trial court that Frank failed to show that he pursued this appeal in good faith. Therefore, the estate is not responsible for compensation and reimbursement of expenses associated with this appeal.

[¶ 37.] Affirmed.

[¶ 38.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

---

**7.** As indicated, Frank claimed the adjusted value of the estate was $1,086,600. This amount included his compensation claim for $27,250. To adjust for this, the difference between $27,250 and $11,000, which is $16,-250, is added to $1,086,600 resulting in $1,102,850. $1,102,850 divided by 14 results in a share of $78,775. $1,102,850 divided by 16 results in a share of $68,928.13. The difference per share is $9,846.88.