2001 SD 85

**In the Matter of the ESTATE OF Ervin ROEHR, Deceased.**

**No. 21749.**

Supreme Court of South Dakota.

Considered on Briefs on May 29, 2001.

Decided July 3, 2001.

Leon J. Vander Linden of Delaney, Vander Linden and Delaney, Webster, SD, for appellee Don Roehr.

Danny R. Smeins, Webster, SD, for appellant Dennis Roehr and Joan Dresch.

AMUNDSON, Justice

[¶ 1.] Contestants, heirs of the estate of their father, Ervin Roehr, appeal the trial court's determination that certain land inherited from Ervin's father was owned property pursuant to SDCL 29A–3–101, and subject to an option to purchase in Ervin's will. We affirm.

### FACTS

[¶ 2.] In June of 1974, Ervin Roehr drafted a will. Even though Ervin made no changes to this draft, he did not sign the will until March 11, 1975. Ervin's will provided for an option to his son Don to buy "land I now own" at the price of $100 per acre. In a subsequent clause, Ervin's will also provided that any land hereinafter acquired would be divided among all three children: Dennis, Don, and Joan Dresch.*

[¶ 3.] On November 11, 1974, Louis F. Roehr, Ervin's father, died leaving the land subject to this appeal to Ervin. Ervin died on February 2, 1999. This probate contest soon followed. The issue before the trial court was whether the land devised to Ervin from Louis was "land I now own" by Ervin, and covered by the "option" portion of Ervin's will. The trial court held that the "land I now own" included the land Ervin received from his father, Louis pursuant to SDCL 29A–3–101. Contestants, Dennis Roehr and Joan Dresch appeal raising the following issue:

Whether Ervin's will, allowing for Don Roehr the right to purchase "now owned land" applies to the land devised from Louis to Ervin.

### STANDARD OF REVIEW

[¶ 4.] This Court reviews a trial court's findings of fact under the "clearly erroneous" standard and overturns a trial court's conclusions of law only when the trial court erred as a matter of law. *In re Estate of O'Keefe*, 1998 SD 92, ¶ 7, 583 N.W.2d 138, 139 (citing *Century 21 Associated Realty v. Hoffman*, 503 N.W.2d 861, 864 (S.D.1993)). "The question is not whether this Court would have made the same finding that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed." *Id.* (citations omitted). "This Court interprets statutes under a de novo standard of review without deference to the decision of the trial court." *In re Estate of Jetter*, 1997 SD 125, ¶ 10, 570 N.W.2d 26, 28.

---

* The bequest to the children was, however, subject to the mother's life estate interest in the property. No one disputes this portion of the will.

## DECISION

[¶ 5.] It is uncontroverted that Ervin drafted his will in June of 1974, but had not signed the document until March of 1975. It is well settled that a will is not valid until properly executed, including the signing by the testator. SDCL 29A–2–502 (b)(2). Thus, the will signed by Ervin had no force and effect until signed in March of 1975. Therefore, the June 1974 date is irrelevant to the disposition of this case.

[¶ 6.] The disposition of this case depends on our interpretation of SDCL 29A–3–101. SDCL 29A–3–101 provides:

> The power of a person to leave property by will, and the rights of creditors, devisees, and heirs to the person's property are subject to the restrictions and limitations contained in this code to facilitate the prompt settlement of estates. Upon the death of a person, that person's real and personal property devolves to the persons to whom it is devised by will or to those indicated as substitutes for them in cases involving lapse, renunciation, or other circumstances affecting the devolution of testate estate, or in the absence of testamentary disposition, to the heirs, or to those indicated as substitutes for them in cases involving renunciation or other circumstances affecting devolution of intestate estates, subject to homestead allowance, exempt property and family allowance, rights of creditors, elective share of the surviving spouse, and administration.

The trial court, in its Findings of Fact and Conclusions of Law, states that SDCL 29A–3–101 makes it clear that Louis' property automatically vested in Ervin at the time of Louis' death on November, 11, 1974, subject only to the probate of the estate. The trial court was correct in its interpretation and effect of SDCL 29A–3–101. The statute states that "real and personal property devolves to the persons to whom it is devised by will." The term "devolve" is defined as "[t]o pass or to be transferred from one person to another; to fall on, or accrue to, one person as the successor of another; as a title, right office or liability." Black's Law Dictionary 453 (6th ed.1990).

[¶ 7.] Contestants concede that the property devised by Louis to Ervin vested on November 11, 1975 pursuant to SDCL 29A–3–101. *See also Estate of Hafferman,* 442 N.W.2d 238 (S.D.1989); *Estate of Lingscheit,* 387 N.W.2d 738 (S.D. 1986). Contestants, however, argue that Ervin did not legally or technically "own" the property devised by his father Louis until January 29, 1976, the date of final distribution of Louis' estate. Contestants claim that legal title did not pass to Ervin until that time. As such, Contestants argue that because Ervin signed the will without having legal title of the devised land, the land inherited by Ervin is not subject to Don's option to buy at $100 per acre, rather, the land should be divided equally among the three children.

[¶ 8.] Although South Dakota adopted the UPC in 1995, this Court, prior to its adoption, has held, "upon the death of the testator the devisee becomes vested with the same right to, and interest in, the devised property that was possessed by the testator, at the time of his death[.]" *Hicks v. Skie,* 67 S.D. 115, 289 N.W. 507, 508 (S.D.1939). "On death of the testator, title to real property devised in a will becomes vested in the devisee subject to control of the county court and possession of executor during administration." *In re Estate of Kappenmann,* 82 S.D. 91, 141 N.W.2d 780, 783 (S.D.1966). "Upon the death of the testator and even before the probate of the will, the general rule is that title to realty vests in the devisee." *Bollinger v. Eldredge,* 524 N.W.2d 118, 123 (S.D.1994). The UPC is consistent with

this general rule and Contestants have not cited any authority contrary to this position.

 [¶ 9.] We have stated on numerous occasions that the intent of the testator is the primary objective to interpreting a will. *Estate of Klauzer*, 2000 SD 7, 604 N.W.2d 474. "Our goal in interpreting a will is to discern the testator's intent. If intent is clear from the language used, that intent controls." *Klauzer*, 2000 SD 7, ¶ 9, 604 N.W.2d at 477. The testator's intent does not depend on the legal nuances of probate distribution and the legal passing of title. Rather, our inquiry is "limited to what [Ervin] meant by what he said, not what we think [Ervin] meant to say." *Id.*

[¶ 10.] At the probate contest, the trial court heard testimony from three witnesses who testified as to Ervin's intent to allow this land to be subject to Don's right to purchase at $100 per acre. Although extrinsic evidence is admissible to clarify any ambiguity, "an ambiguity is not of itself created simply because the parties differ as to the interpretation of the will." *Klauzer*, 2000 SD 7, ¶ 10, 604 N.W.2d at 477 (quoting *City of Watertown v. Dakota, Minnesota & Eastern RR Co.*, 1996 SD 82, ¶ 21, 551 N.W.2d 571, 576). The plain and unambiguous language of the will does not warrant outside testimony in order for the court to determine Ervin's intent. "We determine that the testator's intent is clearly expressed within the four corners of the document. We are bound by the unambiguous language of the will. Therefore, extrinsic evidence is not needed." *Klauzer*, 2000 SD 7, ¶ 14, 604 N.W.2d at 478. While it may have been error for the trial court to consider such testimony, the record supports the court's ultimate determination that the land inherited by Ervin was "land

I now own" at the time he executed his will.

[¶ 11.] We affirm.

[¶ 12.] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, concur.