#28083-r-LSW

**2017 S.D. 74**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

GUARDIANSHIP AND CONSERVATORSHIP OF
MARY D. NOVOTNY, ALSO KNOWN AS
MARY NOVOTNY, a Protected Person

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
TRIPP COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN L. BROWN
Judge

\* \* \* \*

JOHN M. FITZGERALD
KELLY M. PETERSON of
Fitzgerald Law Firm
Rapid City, South Dakota                 Attorneys for Appellant
                                          Catherine Novotny.


BRAD A. SCHREIBER
The Schreiber Law Firm
Pierre, South Dakota                      Attorney for appellees
                                          Paul Novotny Jr. and Mark
                                          Novotny.

\* \* \* \*

                                          CONSIDERED ON BRIEFS
                                          ON OCTOBER 2, 2017

                                          OPINION FILED **11/15/17**

WILBUR, Retired Justice

[¶1.]      The sole beneficiary of an irrevocable trust petitioned the circuit court to terminate the trust and distribute the trust property to her.  After a hearing on the beneficiary's motion for summary judgment, the circuit court refused to terminate the trust and entered summary judgment in favor of the trustees.  The beneficiary appeals.  We reverse and remand.

## Background

[¶2.]      Mary Novotny and Paul Novotny Sr. had six children: Catherine, Teresa, Mark, Paul Jr., Bruce, and Marianne.  In 2007, Mary executed her last will and testament devising her estate in equal shares to her six children as well as shares to her grandchildren.  In 2012, Mary was found to be a person in need of protection.  Paul Sr. had passed away.  On July 12, 2012, a circuit court appointed Teresa, Paul Jr., and Mark as Mary's co-guardians and co-conservators.

[¶3.]      Mary's estate was worth approximately $2,000,000.  Gary Fenenga, a certified public accountant, had been Mary's accountant.  After Mary was found to be a person in need of protection, Fenenga became the accountant for Mary's co-conservators and co-guardians.  He recommended that Teresa, Paul Jr., and Mark reduce Mary's estate to avoid negative tax consequences.  In particular, he advised them to distribute monetary gifts to Mary's children and grandchildren to reduce the estate to $1,000,000.  Between July and December 2012, Teresa, Paul Jr., and Mark gifted a total of $1,270,388.80 equally among the six Novotny children.  Each child received $196,564.80.  Mary's grandchildren received less substantial monetary gifts.

[¶4.]     Although five of the six Novotny children *personally* received their gifts, Teresa, Paul Jr., and Mark could not locate Catherine. They claimed that Catherine had not been in contact with any Novotny sibling or Mary for some time. They decided to preserve Catherine's share by creating an irrevocable trust and placing Catherine's share of the substantial gifting in the trust. They created the trust in December 2012, and appointed themselves as trustees.

[¶5.]     In January 2013, Teresa, Paul Jr., and Mark, in their capacities as Mary's co-guardians and co-conservators of Mary's estate, petitioned the circuit court for an order retroactively approving their estate plan and the previously distributed gifts, including the creation of the trust holding Catherine's gift. We note that SDCL 29A-5-420 provides that "[u]pon petition therefor, the court may authorize a conservator to exercise any of the powers over the estate or financial affairs of a protected person which the protected person could have exercised if present and not under conservatorship, including the powers: (1) To make gifts to charity or other donees, and to convey interests in any property" and (3) To create irrevocable trusts. In the petition, Teresa, Paul Jr., and Mark informed the court that due to the lowering of the Federal Estate Tax credit, the purpose of the estate plan and previous gifting was to lower Mary's assets below $1,000,000. They further claimed "[t]hat all gifting was done in such a manner as to treat all heirs substantially equally." In regard to Catherine's gift, the petition identified "[t]hat the protected person has established an irrevocable trust" for Catherine "in the event she can be located." The trust would terminate at the end of ten years if

Catherine could not be located. The trustees requested that the court appoint a guardian ad litem to protect Catherine's interest.

[¶6.]     At the hearing on the petition, the attorney for Mary's conservatorship explained,

> We do have one unique situation in this case, your Honor. We have six children, but we have one child that we cannot locate. So, what we've done, to protect that individual's interest, is we have set up a trust for her. The conservators have set up a - - the co-conservators and co-guardians - - have set up a trust for her out of their Mom's estate, and she has been treated basically equally with all the rest of the heirs. So, her share has gone in to this trust. We haven't been able to locate her. We've actually hired - - we've actually gone so far as to hire a private investigator. He's searched, and he's been unable to locate her. So, we haven't been able to locate her. The trust we set up is a trust for her, and she is entitled to the same assets as the other heirs, if she can be located within the next ten years. If she cannot be located within the next ten years, then the trust will lapse. At that time, she would be over 70, so ten years, we thought, is a long enough time to take care of that.

At the conclusion of the hearing, the court approved the petition. The court appointed Fenenga as Catherine's guardian ad litem.

[¶7.]     In February 2014, Catherine learned of her interest in the trust. She petitioned the circuit court to dissolve the trust and distribute the assets to her. Before the circuit court considered that petition, Catherine filed a second petition requesting that the court terminate the trust. Catherine also alleged that the trustees (Teresa, Paul Jr., and Mark) had breached their fiduciary duties. Both parties moved for summary judgment. The court granted the trustees summary judgment and granted their motion for reimbursement of attorney's fees under SDCL 55-3-13. The court entered an amended order awarding additional attorney's fees and costs to the trustees.

[¶8.]          In April 2015, Catherine appealed the circuit court's order and amended order reimbursing the trustees' attorney's fees, costs, and expenses. This Court reversed the circuit court's orders in *In re Guardianship and Conservatorship of Novotny* (*Novotny I*), 2016 S.D. 36, 878 N.W.2d 627. We concluded that "there is no evidence in the record that supported the basis for reimbursement under SDCL 55-3-13[.]" *Id.* ¶ 15. We remanded "for further proceedings consistent with this opinion." *Id.*

[¶9.]          Following this Court's decision, Catherine filed another petition to terminate the trust and distribute the trust assets. She moved for summary judgment. The circuit court held a hearing in December 2016 to address Catherine's summary judgment motion and this Court's remand directive in *Novotny I* on the issue of attorney's fees, costs, and expenses. But during the hearing, the trustees were not prepared to address the fees issue. So the circuit court and parties agreed to continue that issue and address only Catherine's motion for summary judgment. This appeal, therefore, concerns only the circuit court's ruling on Catherine's petition to terminate the trust and distribute the trust assets to her.

[¶10.]          On that issue, Catherine argued that the trust document was ambiguous as to the trustor's intent. She relied on the circumstances surrounding the trust's creation and the language of the trust. In particular, Catherine emphasized that Mary desired to treat all her children equally, that the trust was created to hold Catherine's share because Catherine could not be located, and that the trust language indicated it was for her sole benefit. The trustees, in response,

argued that the trust unambiguously gave the trustees discretion to distribute assets to Catherine during her lifetime and provided only two ways to terminate the trust, neither of which included Catherine being located.

[¶11.] The circuit court did not specifically rule on the question of ambiguity. Instead, the court denied Catherine's motion for summary judgment. It concluded that nothing in the trust indicated an intent to terminate upon Catherine's discovery. It interpreted the trust to be a discretionary trust and a spendthrift document for Catherine's benefit.

[¶12.] Catherine appeals, asserting four issues for our review. Because we resolve the case on the first two issues, we restate only those issues.

> 1. Whether the trust is ambiguous.

> 2. Whether the circuit court erred in not terminating the trust.

### Analysis

### 1. Whether the trust is ambiguous.

[¶13.] Catherine argues that the trust is ambiguous because the trustor's intent cannot be discerned. The trustees respond that the trust is unambiguous because the trustor clearly intended the trust to terminate in one of two ways, and neither avenue exists in this case. The circuit court did not specifically rule one way or the other. Yet the court referred to and relied on extrinsic evidence when it denied Catherine's motion for summary judgment.

[¶14.] Whether a trust is ambiguous is a question of law reviewed de novo. *In re Sunray Holdings Tr.,* 2013 S.D. 89, ¶ 11, 841 N.W.2d 271, 274. An ambiguity is not created simply because the parties differ as to the interpretation of the

instrument. *In re Estate of Klauzer*, 2000 S.D. 7, ¶ 10, 604 N.W.2d 474, 477.

Instead, a trust is ambiguous "when it is reasonably capable of being understood in

more than one sense." *Id.* (quoting *In re Estate of Jetter*, 1997 S.D. 125, ¶ 20, 570

N.W.2d 26, 30-31).

[¶15.]    When presented with a trust instrument, "our 'task is to ensure that

the intentions and wishes of the trustor are honored.'" *Sunray Holdings Tr.*, 2013

S.D. 89, ¶ 14, 841 N.W.2d at 274 (quoting *In re Florence Y. Wallbaum Revocable*

*Living Tr. Agreement*, 2012 S.D. 18, ¶ 20, 813 N.W.2d 111, 117). If the intention of

the trustor is clearly revealed by the language used in the trust, we will declare and

enforce the trustor's intent. *Wallbaum Revocable Living Tr.*, 2012 S.D. 18, ¶ 20, 813

N.W.2d at 117. If, however, "doubt remains as to the meaning the [trustor] sought

to express, [the trustor's] intention will be determined by reconsidering [the

trustor's] entire language and the circumstances surrounding the making of the

[trust] in connection with established canons of constructional preference." *Briggs*

*v. Briggs*, 73 S.D. 500, 506, 45 N.W.2d 62, 65 (1950); *accord In re Estate of Nelson*,

250 N.W.2d 286, 288 (S.D. 1977); *Estate of Klauzer*, 2000 S.D. 7, ¶ 9, 604 N.W.2d at

477.

[¶16.]    Here, the trust document purports that "Mary D. Novotny" created the

trust and that she is the grantor. But at the time the trust was created, Mary had

been found to be a person in need of protection, and co-guardians and co-

conservators had been appointed. So in fact, Teresa, Paul Jr., and Mark created the

trust on Mary's behalf and in their capacities as Mary's co-conservators and co-

guardians. They also appointed themselves as trustees and as recipients of the trust assets upon Catherine's death.

[¶17.] In regard to the language of the trust, it directs the trustees to "hold, manage, invest, and reinvest the trust property for the sole benefit of Catherine A. Novotny[.]" It gives the trustees absolute discretion to distribute income and principal to Catherine during her lifetime "at such time or times and in such amounts and manner" as they "shall determine." Yet the trust also specifically identifies that Catherine could not be located.

[¶18.] Based on our review of the entire trust document, the trust is ambiguous as to whether Mary (via her co-conservators/co-guardians) intended to create the trust to preserve Catherine's assets for her sole benefit until she could be located or whether Mary intended the trust to exist for Catherine's sole benefit for her lifetime during which time her siblings would distribute money to Catherine at their discretion. Because the trust document is ambiguous, "the language used and the circumstances surrounding the execution of the writing will again be examined in light of pertinent rules of construction." *Estate of Klauzer*, 2000 S.D. 7, ¶ 9, 604 N.W.2d at 477 (quoting *Estate of Nelson*, 250 N.W.2d at 288). "Given the ambiguity in the" trust, "it is appropriate to look to the extrinsic evidence of [the trustor's] intent in executing the trust[.]" *Luke v. Stevenson*, 2005 S.D. 51, ¶ 11, 696 N.W.2d 553, 558.

[¶19.] The trustees concede that the trust was created to preserve Catherine's assets until she could be found. Indeed, at the 2013 hearing to obtain the circuit court's after-the-fact approval of the co-guardians and co-conservators' creation of

the trust, the attorney for Mary's conservatorship told the court that the trust was created to preserve Catherine's share of Mary's estate because Catherine could not be located. He said that Catherine "has been treated basically equally as the rest of the heirs" and that "she is entitled to the same assets as the other heirs, if she can be located within the next ten years." But the trustees also argue that the trust was created to protect the funds from "Catherine's imprudence, extravagance, and inability and poor judgment in handling her financial affairs." As support, they rely on their conclusory affidavit statements. Yet the trustees do not direct this Court to evidence, extrinsic or otherwise, to support their claim. Even so, the trustees further claim that the trust was created to protect the funds from Catherine's creditors, if any. They emphasize that the trust includes a spendthrift provision. But the spendthrift provision contains no language suggesting an intent to protect *Catherine* from *her* creditors. Rather, the spendthrift provision is a short, standard statement indicating an intent to protect the trust from creditors.

[¶20.] In light of the language of the trust and the evidence in the record, we conclude that the trustor's intent and wish in creating the trust was to preserve Catherine's assets until she could be located. It is undisputed that Mary desired to treat her children equally—her last will and testament devised equal shares of her estate to her six children. Although Mary did not personally create the trust, her co-conservators and co-guardians did so on her behalf. And in obtaining court approval of the trust after its creation, Teresa, Paul Jr., and Mark claimed that it was created because (1) Catherine could not be found, (2) Catherine was to be treated equally, and (3) the trust would ensure her share was preserved until she

could be located. The trust document itself also supports that it was created because Catherine could not be found and that it was for her sole benefit.

[¶21.] It would be contrary to Mary's intent if we construe the trust to mean that Mary intended Catherine's siblings (Teresa, Paul Jr., and Mark) to have the right to control when, how, and if Catherine receives her equal share of their mother's estate for Catherine's lifetime. Because the evidence supports that the trust was created on Mary's behalf to preserve Catherine's share until she could be located, the circuit court's interpretation of the trust to the contrary is reversed.

**2. Whether the circuit court erred in not terminating the trust.**

[¶22.] Catherine next argues that termination of the trust is warranted under SDCL 55-3-26 because termination would "substantially further the trustor's purpose in creating the trust" and because the trustor could not have anticipated that the trustees would refuse to give Catherine her share upon her being located. Catherine also argues that termination is warranted under SDCL 55-3-23(2) because the trust purpose has been fulfilled. The trustees, however, argue that the trust provides only two ways to terminate: Catherine's death or the passage of ten years if Catherine could not be located.

[¶23.] The circuit court did not address Catherine's claim that termination was warranted under SDCL 55-3-26 or SDCL 55-3-23(2) because the circuit court granted summary judgment against Catherine after erroneously interpreting the trust. Because we conclude that the trustor created the trust with the intent to preserve Catherine's share until Catherine could be located, and it is undisputed that Catherine has been located, the trust purpose has been fulfilled. Because the

trust purpose has been fulfilled, SDCL 55-3-23(2) authorizes termination of the trust.

[¶24.] Termination of the trust is further warranted under SDCL 55-3-26. "On petition by a trustee or beneficiary, the court may . . . terminate the trust if, because of circumstances not anticipated by the trustor, . . . termination of the trust would substantially further the trustor's purposes in creating the trust. Upon termination of a trust under this section, the trust property shall be distributed in accordance with the trustor's probable intention." *Id.* Here, Catherine is a beneficiary and has petitioned for termination of the trust because termination of the trust would substantially further the trustor's purpose to preserve Catherine's share until Catherine could be located, and Catherine has been located. In Catherine's view, the trustor could not have anticipated that the trustees would not terminate the trust. We agree.

[¶25.] Mary desired to treat all six children equally, and she indicated no intent to condition her gifting on any particular child's ability to manage his or her finances. To further that interest, the trustor created the trust to preserve Catherine's share until Catherine could be located. Although Catherine was located in 2014 and petitioned for termination of the trust and receipt of her share of the gifting made on her mother's behalf, it is now 2017, and the trustees have refused to honor Mary's intentions and wishes in creating the trust. Under the circumstances, the trustor could not have anticipated that upon Catherine being located, Catherine would not receive her equal share of the substantial gifting.

[¶26.] Because the trust purpose has been fulfilled, *see* SDCL 55-3-23(2), and because termination of the trust would "substantially further the trustor's purposes in creating the trust," the court is directed on remand to terminate the trust and distribute the trust property to Catherine, which is "in accordance with the trustor's probable intention." *See* SDCL 55-3-26.

[¶27.] We reverse and remand.

[¶28.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and BERN, Circuit Court Judge, concur.

[¶29.] BERN, Circuit Court Judge, sitting for KERN, Justice, disqualified.

[¶30.] JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.