Douglas J. KANALY, Patrick S. Konechne, Dennis L. Lihs, Robert McBride, Donald Van Cleave and Joseph W. Wolf, Plaintiffs and Appellees,

v.

STATE of South Dakota, By and Through its Governor, William J. JANKLOW, the South Dakota Board of Regents and the Board of Charities and Corrections, Defendants and Appellants.

Nos. 15253, 15255, 15258, 15260, 15264 and 15265.

Supreme Court of South Dakota.

Argued Oct. 26, 1986.

Decided Feb. 25, 1987.

Steven M. Johnson of Brady, Kabeise-man, Reade & Johnson, Yankton, for plaintiffs and appellees; Celia Miner of Brady, Kabeiseman, Reade & Johnson, Yankton, on the brief.

Brent A. Wilbur of May, Adam, Gerdes & Thompson, Pierre, Wayne F. Gilbert of Banks & Johnson, P.C., Rapid City, John W. Bastian, Asst. Atty. Gen., Pierre, for defendants and appellants.

FOSHEIM, Retired Justice.

The Board of Regents and Board of Charities and Corrections appeal a circuit court order requiring them to pay $17,-919.87 in attorneys' fees, costs, and expenses incurred by plaintiffs. Plaintiffs also request attorneys' fees and costs incurred upon this and a prior related appeal. We reverse.

This is our second exposure to this case. It began as an action to halt the conversion of the University of South Dakota at Springfield (USD/S) into a minimum security prison by transferring its facilities to the Board of Charities and Corrections. In *Kanaly v. State By and Through Janklow*, 368 N.W.2d 819 (S.D.1985) (*Kanaly I*), this court held the gratuitous transfer violated the federal act dedicating the land for educational uses, and Article VIII, § 7 of the South Dakota Constitution. Both provisions prohibited transfer of the land except in exchange for its full market value. The case was then remanded for determination of the full market value of all property transferred. Shortly before *Kanaly I* was handed down however, the South Dakota Legislature by statute transferred the USD/S trust land and funds to the remaining state normal schools. *Merkwan v. State by and through Janklow*, 375 N.W.2d 624 (S.D.1985). Pursuant to our decision in *Kanaly I*, that enactment obviated any need for plaintiffs' requested relief from the unconstitutional transfer. *See Merkwan, supra.*

No request for attorneys' fees was made in the complaint. However, following the remand in *Kanaly I*, appellees made a motion in circuit court for a total of $43,491.88 in legal fees, sales tax, and other expenses. $36,305.00 of this amount represented attorneys' fees. Plaintiffs' counsel calculated fees at the rate of either $100.00 or $70.00 per hour depending upon which member of the firm performed the work billed. Following a hearing and a review of briefs, the trial court granted the motion and scheduled a further hearing to determine the amount to be awarded. The court thereafter determined that each of plaintiffs' counsel should be compensated at the rate of $65.00 per hour. After making other adjustments regarding plaintiffs' requests, the court awarded $17,919.87 in attorneys' fees, costs, and expenses. The issue on this appeal is limited to the attorneys' fees allowance.

The general rule in the United States is that absent statutory exception, or an enforceable contract so providing, a litigant must pay his own attorneys' fees. *Van Emmerik v. Montana Dakota Utilities Co.*, 332 N.W.2d 279 (S.D.) (*Van Emmerik III*), cert. denied, 464 U.S. 915, 104 S.Ct. 278, 78 L.Ed.2d 257 (1983) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). This so-called "American rule" has been consistently followed in South Dakota. *See* numerous cases cited in *Van Emmerik III*, 332 N.W.2d at 282. SDCL 15–17–6 and 7 codify this rule. SDCL 15–17–6 provides: "The compensation of attor-

neys and counselors at law for service in civil and criminal actions and proceedings must be left to the agreement, express or implied, of the parties." However, SDCL 15–17–7 provides:

> The court may allow attorneys' fees as costs for or against any party to an action *only* in the cases *if (sic) it is specifically provided by statute,* but nothing herein abridges the power of the court to order payment of attorneys' fees in all case of divorce, annulment of marriage, determination of paternity or for separate maintenance and alimony, if the allowance of the same before or after judgment is warranted. Nor does anything herein abridge the power of the court to allow attorneys' fees from trusts administered through the court. (Emphasis added.)

Finding no statutory authorization to award the fees, the trial court reasoned that any award of attorneys' fees and costs must fall under a common law exception to the no-fee rule. The court determined that any of three such exceptions allowed the award in this case, namely (1) the common fund doctrine, (2) the substantial benefit doctrine, and (3) the trust administration rule.

*Van Emmerik III* is apparently the sole South Dakota case discussing the common fund and substantial benefit doctrines. According to *Van Emmerik III,* the common fund exception "allows an award of attorneys' fees from a common fund when a plaintiff, usually on behalf of a class, has successfully maintained an action that benefits a group of others in the manner that it benefits himself." 332 N.W.2d at 282, (citing *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)). The substantial benefit rule allows reimbursement to the plaintiff where the litigation he pursued conferred a substantial benefit upon an ascertainable class and where such an award will spread the costs of the litigation proportionately among these persons. *Van Emmerik III* (citing *Mills, supra* ).

■ Because the common fund and substantial benefit doctrines were discussed in *Van Emmerik III* the trial court apparently assumed these common law exceptions to the American rule would allow the award of attorneys' fees and costs in this case. In *Van Emmerik III,* however, we concluded neither doctrine applied because sovereign immunity precluded their application and because certain essential elements of the doctrines were absent. In the present case we need not belabor any of these exceptions to the American rule. Regardless of their merits, the simple and clear obstacle preventing their application is their failure to be specifically provided for by any statute. They are thus prohibited by SDCL 15–17–7. As we recently stated in *American Rim & Brake, Inc. v. Zoellner,* 382 N.W.2d 421, 424 (S.D.1986) (quoting *Simpson v. Tobin,* 367 N.W.2d 757, 763 (S.D.1985)), "[t]his court will not enlarge a statute beyond its face where the statutory terms are clear and unambiguous in meaning" and "[w]e assume that statutes mean what they say and that the legislators have said what they meant." *Zoellner,* 382 N.W.2d at 424 (quoting *Crescent Elec. Supply Co. v. Nerison,* 89 S.D. 203, 210, 232 N.W.2d 76, 80 (1975)). It is settled South Dakota law that the common law is not in force when it conflicts with statutes enacted by the legislature. SDCL 1–1–23(5), –24. A statute in derrogation of the common law is to be "liberally construed with a view to effect its objects." SDCL 2–14–12. Furthermore, as we stated in *Van Emmerik III,* our *Carlson v. City of Faith,* 75 S.D. 432, 67 N.W.2d 149 (1954), decision "impliedly rejected the concept of an extra-statutory award of attorneys' fees for the redress of a public wrong." 332 N.W.2d at 284. Despite the recognition given the common law doctrines in *Van Emmerik III,* neither exception was applied. This recognition was at most obiter dictum. It follows that application of the trust administration rule is similarly precluded.

■ Counsel for Kanaly argues in the alternative that the allowance of attorneys' fees was authorized by SDCL 15–17–7

wherein it provides nothing shall "abridge the power of the Court to allow attorneys' fees from trusts administered through the Court." In *Noll v. Brende,* 318 N.W.2d 319 (S.D.1982), Chief Justice Wollman, writing for this court, considered a request for attorneys' fees to be awarded from an implied trust. He stated: "We do not consider [SDCL 15–17–7] as authorizing the award of attorneys' fees in the circumstances of this case. This was not a trust administered through the courts. In the absence of specific statutory authority the trial court should not have awarded the [attorneys'] fees in question." 318 N.W.2d at 321 (citing *Estate of Weickum,* 317 N.W.2d 142 (S.D.1982); *Boland v. City of Rapid City,* 315 N.W.2d 496 (S.D.1982)). It follows that the phrase "trusts administered through the court" found in SDCL 15–17–7 refers to SDCL ch. 21–22, "Administration of Trust Estates" and not to the South Dakota educational trust fund.

In *Kanaly I,* Justice Henderson reaffirmed our historic position that the provisions of the Enabling Act and the South Dakota Constitution

> create a special, permanent and perpetual trust of all land, money, property, and proceeds of the same, donated to the state for educational institutions by the United States and individuals alike and that the state is the trustee is beyond question. Such a conclusion is dictated by the strong and unequivocal language of the provisions themselves and this Court has long acknowledged the permanent trust relationship.

368 N.W.2d at 823. *Kanaly I* cites *Heston v. Mayhew,* 9 S.D. 501, 502, 70 N.W. 635, 636 (1897), which holds "[i]t is the duty of the legislature to direct and control the management of such trust." The remand in *Kanaly I* for the trial court to conduct hearings concerning the nature and value of the transferred property did not make the educational fund a trust administered through the court and subject to the allowance of attorneys' fees pursuant to SDCL 15–17–7. It remained a trust under the control and management of the legislature. *See also Schelle v. Foss,* 76 S.D. 620, 83

N.W.2d 847 (1957); *In re State Bonds,* 7 S.D. 42, 63 N.W. 223 (1895).

Plaintiffs also requested attorneys' fees and costs incurred in the *Kanaly I* and present appeal. The trial court held it did not have jurisdiction to make this award. Plaintiffs argue that both this court and the trial court have jurisdiction to award such fees. Again, however, no statutory authority is cited and we find none.

The order of the trial court is reversed and remanded for a calculation and allowance of costs only. *See First Nat. Bank of Minneapolis v. Kehn Ranch,* 394 N.W.2d 709, 717 (S.D.1986).

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., dissents.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (dissenting).

Plaintiffs were awarded attorney's fees by the trial court. The majority opinion reverses, citing SDCL 15–17–7 for the proposition that no statutory authorization exists upon which an award of attorney's fees can be based. We are informed that this trust is not one that is administered through the courts therefore preventing an award of attorney's fees pursuant to SDCL 15–17–7. I do not agree.

Lands deeded to the State of South Dakota comprise the corpus of an educational trust. The State is trustee, and the legislature is charged with the duty "to direct and control the management of such trust." *Heston v. Mayhew,* 9 S.D. 501, 502, 70 N.W. 635, 636 (1897). *See Kanaly I,* 368 N.W.2d at 823–24. Management of the trust must always comport to Enabling Act and State Constitutional provisions. *See id.* at 823 (citing *In re State Bonds,* 7 S.D. 42, 63 N.W. 223 (1895); *Heston,* 9 S.D. 501, 70 N.W. 635). In discussing the educational trust, we observed:

That it is no ordinary trust seems settled.... "The state appears in this action in its capacity of trustee, and must be treated as a natural person, acting in the same capacity; *regard being had to the character of the trust, and the spirit of the constitutional provisions relating thereto. The rules which regulate ordinary trustees will need to be so applied as to secure and promote the ends contemplated by the constitution. It is the duty of each branch of the state government to regard the sacred character of this important trust, and to insist upon the utmost fidelity in its management."*

*Schelle v. Foss,* 76 S.D. 620, 626–27, 83 N.W.2d 847, 851 (1957) (quoting *State v. Ruth,* 9 S.D. 84, 90, 68 N.W. 189, 190 (1896)) (emphasis added).

In *Kanaly I,* this Court unanimously ruled that our legislature, via Senate Bill 221, "violat[ed] the permanent trust fund provisions of the Enabling Act and South Dakota Constitution Article VIII, § 7" when it "transfer[red] ... trust property to another state governmental agency, without compensating or reimbursing the trust fund for the full market value of the transferred property...." 368 N.W.2d at 829, 824.[1] We decided that the legislature must reimburse the trust fund for the full market value of property and interests transferred, and this Court remanded the case to the trial court to conduct hearings for this purpose. *Id.* at 829.

This scenario is illustrative of my reasons for writing this dissent. The legislature was not, is not, and never will be separately and singularly charged with absolute control of this trust. The State is trustee and "[i]t is the duty of each branch of the state government to regard the sacred character of this important trust, and to insist upon the utmost fidelity in its management." *Schelle,* 76 S.D. at 626–27, 83 N.W.2d at 851 (quoting *Ruth,* 9 S.D. at

90, 68 N.W. at 190). Granted, our legislature is primary caretaker of this trust, and its sphere of control is large indeed; but its power is not limitless nor its discretion unbridled. When legislative dealings regarding trust fund property are legally challenged in our courts and subsequently declared unlawful, trust control within the narrow parameters of the mismanagement, and rectification thereof, shifts to the judicial branch. In this fashion, I contend that the educational trust becomes one that is "administered through the court" and attorney's fees may be awarded pursuant to SDCL 15–17–7, as part of the judicial branches' correction, to the greatest extent possible, of legislative trust fund mismanagement.

I am also persuaded, largely by the trial court's Memorandum Decision, that the common law provides sufficient grounds upon which Plaintiffs may be awarded their attorney's fees. I refer specifically to the "substantial benefit" rule which is summarized by the United States Supreme Court in *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 393–97, 90 S.Ct. 616, 626–28, 24 L.Ed.2d 593, 607–09 (1970), and discussed by this Court in *Van Emmerik v. Montana Dakota Utils. Co.,* 332 N.W.2d 279, 283, 284–85 (S.D.1983) (Dunn and Henderson, JJ., dissenting). This doctrine permits reimbursement of a successful party's attorney's fees if the litigation (1) "conferred a substantial benefit on the members of an ascertainable class"; and (2) "where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Mills,* 396 U.S. at 393–94, 90 S.Ct. at 626, 24 L.Ed.2d at 607. *See* D. Dobbs, *Handbook on the Law of Remedies,* § 3.8, at 200 (1973); Annot., 89 A.L.R.3d 690 (1979).

In this case, "[t]he beneficiaries of this trust ... are the various educational insti-

---

1. *Kanaly I* was not the first case involving unconstitutional manipulations of the educational trust fund. *See Schelle,* 76 S.D. 620, 83 N.W.2d 847 (in which this Court prohibited the sale, at a loss, of United States Bonds); *In re State Bonds,* 7 S.D. 42, 63 N.W. 223 (where this Court identified the state's duty to repay the educational trust when defalcation by a state treasurer had occurred).

tutions of this state," *Kanaly I,* 368 N.W.2d at 823–24 (citing *Schelle,* 76 S.D. 620, 83 N.W.2d 847), and they have received a substantial benefit as a result of litigation commenced by Plaintiffs. This author agrees wholeheartedly with the trial court that:

> Were it not for the actions of plaintiffs, the perpetual trust fund would not have been reimbursed. The declaration by the South Dakota Supreme Court that the transfer of the USD/Springfield property from the Board of Regents to the Board of Charities and Corrections without compensation violated Article VIII, Section 7 of the South Dakota Constitution, has brought the value of the land, buildings and personal property within the jurisdiction of this Court. At the very least, an equitable fund has been created. This Court can find no reason

why the award of attorneys' fees cannot be made from this fund.

Trial Court Memorandum Decision, at 7, filed September 9, 1985.[2]

Plaintiffs, in my opinion, should be reimbursed for their attorney's fees. Our state statutes do not prohibit recovery and the common law is laced with ample authority to permit same. Plaintiffs have done this state a great service by acting to protect a vital and "sacred" educational trust and reimbursement should be made from the fund they were so successful in preserving.[3]

---

**2.** On October 15, 1985, a supplemental hearing was held at which evidence was received on the subject of attorney's fees. On November 20, 1985, the trial court ruled that Plaintiffs should receive $17,919.87 ($15,941.25 as reasonable attorney's fees, $1,978.62 in costs and related expenses). This award represents less than 1% of the fund preserved by Plaintiffs. Plaintiffs' additional reimbursement to compensate them for legal fees incurred on appeal, which amount when combined with the trial court award above, represents less than 2% of the fund preserved by Plaintiffs.

**3.** I find the reasoning of dissenting Justice Dunn in *Van Emmerik,* 332 N.W.2d at 284–85, as per-

suasive today as when I joined his dissent in 1983. Although equally inapplicable in this case, as it was in *Van Emmerik,* SDCL 15–17–18 conveys an underlying rationale "that reimbursing attorney fees, costs and expenses was intended 'to make the aggressive taxpayer whole and to avoid imposing on him the penalty of personally paying his attorneys in an action brought in behalf of all other taxpayers to redress a public wrong.'" *Van Emmerik,* 332 N.W.2d at 285 (quoting *Carlson v. City of Faith,* 75 S.D. 432, 436–37, 67 N.W.2d 149, 151 (1954)). This "reimbursement" concept is sound logic and has obvious application in the present situation.