2001 SD 57

**In the Matter of the ESTATE OF John B. CATRON.**

**Nos. 21310, 21376.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 29, 2000.

Decided May 9, 2001.

Thomas W. Stanton and Michael V. Wheeler of Demersseman, Jensen, Rapid City, SD, attorneys for appellant.

Haven L. Stuck and Craig A. Pfeifle of Lynn, Jackson, Shultz & Lebrun, Rapid City, SD, attorneys for appellees.

SRSTKA, Circuit Judge.

[¶ 1.] The children and grandchildren (collectively, Family) of John Catron appeal from a circuit court order approving his widow's claim against his estate and awarding fees to the estate's attorneys and to the personal representative. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] John, a Harding County rancher, died June 6, 1998, at the age of 84. His survivors included his second wife, Carol; two children; and grandchildren from a third child who predeceased him. His first wife, Esther, died in 1995. John and Esther were married at the time of her death.

[¶ 3.] Although John was married to Esther, he began an intimate relationship with Carol in 1982, shortly after they met. Two years later, John and Carol began living together and eventually married on August 8, 1997.[1] From the beginning of this relationship, John's family members were concerned about how his relationship with Carol would affect the family's ranching operations and the disposition of his assets.

[¶ 4.] The Catron family had ranched in Harding County for many years. To settle family concerns, John and the Catron family, including his wife Esther, executed a Catron Family Agreement in April 1988. By this document, John agreed to continue his present estate plan and not revoke his 1982 will,[2] and to transfer ranch property only to members of the Catron family.

[¶ 5.] The dispute underlying this appeal arises from a claim Carol submitted against John's estate to redeem property located in Black Hawk, South Dakota. Carol purchased this property in 1973 through a loan secured by a mortgage on the property. In 1984, John paid the balance of this loan; however, the property remained solely in Carol's name.

[¶ 6.] In 1997, eight months before his death, John borrowed $51,000 from First Finance of Rapid City, executing a promissory note secured by a mortgage on the Black Hawk property. Both John and Carol executed the mortgage. Since the couple did not reside on this property, John and Carol allowed Carol's daughter, Cheryl, and her boyfriend, Gary, to live there. This arrangement was conditioned on Cheryl and Gary's paying the mortgage payments in lieu of rent; however, they made only one payment and the note went into default. First Finance commenced to foreclose against the property on May 28, 1998; nine days later, John died. First Finance obtained a judgment of foreclosure to satisfy a total debt of $60,642.31. The property was sold at a sheriff's sale on March 23, 1999.

[¶ 7.] After John's death, a will dated August 15, 1995 was found. In this will,

---

1. The couple lived together from 1984 to 1998 with the exception of a brief separation in 1992.

2. John had previously executed a will and revocable trust on May 13, 1982, naming members of the Catron family as his devisees.

drafted after Esther's death, John left all his property to a revocable trust. According to the terms of the will, in the event that the trust failed, John devised and bequeathed all of his property to Carol. The trust failed and Carol was sole beneficiary of John's property under the will. This will was admitted to probate and a personal representative was appointed. On August 13, 1998, a notice to creditors was first published. Family contested the will as a violation of the 1988 Catron Family Agreement.

[¶ 8.] On May 24, 1999, two months after the sheriff's sale of the Black Hawk property, Carol filed a claim against the estate for $62,504.81 to redeem her property from the foreclosure sale. The personal representative petitioned the court to allow Carol's claim. In April 1999, the parties settled the will contest with Carol receiving 40% of the net estate and Family receiving 60%. Reserved from this settlement, however, was the issue of Carol's claim for payment of funds to redeem the Black Hawk property. Family contended that Carol's claim against the estate was untimely and that it should have been exempted from the settlement as the note had merged into the judgment.

[¶ 9.] Family also disputed the amount of the estate's attorneys' fees and the personal representative's fees, claiming they were exorbitant and derived mainly from Carol's pursuing her own interests that did not benefit the estate. Further, Family claimed that neither the attorneys nor the personal representative filed a timely inheritance tax report.

[¶ 10.] After several hearings, the circuit court approved Carol's claim against the estate and awarded fees to the attorneys for the estate and to the personal representative in the amounts requested. Family appeals, raising three issues that we have consolidated into two:

Whether the circuit court erred in approving Carol's claim.

Whether the circuit court erred in awarding attorneys' fees and the personal representative's fees.

## STANDARD OF REVIEW

■ [¶ 11.] All evidence in this case was received through documentary evidence and deposition testimony. SDCL 15–6–52(a), recently amended, provides that "[f]indings of fact, whether based on oral or documentary evidence, may not be set aside unless clearly erroneous[.]" Under this standard, "[c]lear error exists only when, upon a review of all the evidence in the record, we are left with a definite and firm conviction a mistake has been made." *Even v. City of Parker*, 1999 SD 72, ¶ 9, 597 N.W.2d 670, 674. We review the award of fees under an abuse of discretion standard of review. *In re Estate of Klauzer*, 2000 SD 7, ¶ 26, 604 N.W.2d 474, 480.

## ANALYSIS

### ISSUE ONE

[¶ 12.] **Whether the circuit court erred in approving Carol's claim.**

■ [¶ 13.] The circuit court concluded that, under SDCL 29A–3–804(b), First Finance was not required to file a proof of claim because it had commenced its foreclosure action prior to John's death. This statute provides, in pertinent part, that "[n]o presentation of claim is required in regard to matters claimed in proceedings against the decedent which were pending at the time of death in any court." The court further concluded that Carol succeeded to the rights of First Finance by satisfying John's debt out of her solely-owned property; and that she had a valid claim against the estate in the amount necessary to redeem this property.

[¶ 14.] Family claims the circuit court erred in approving Carol's claim because the foreclosure action extinguished the debt under SDCL 21–47–17. This statute provides in pertinent part that "foreclosure by action of a mortgage upon real estate operates as a complete extinguishment, satisfaction and payment of the debt secured by the mortgage." *Perpetual Nat'l Life Ins. Co. v. Brown*, 85 S.D. 330, 182 N.W.2d 216, 218 (1970). First Finance purchased the mortgaged property at the March 23, 1999 sheriff's sale, pursuant to SDCL 21–47–15.[3] Family concludes that after this sale, the promissory note and debt were no longer in existence. In particular, Family claims that Carol did not submit her claim against the estate until after the mortgage had been foreclosed, the property sold, and the debt extinguished. Hence, under Family's argument, Carol had nothing on which to base her claim.

[¶ 15.] Family also claims Carol received benefits from the loan, thus, she is not entitled to the benefits and protections of suretyship accorded by SDCL 56–2–1 and other suretyship statutes. Family contends that *State of Wisconsin Investment Bd. v. Hurst*, 410 N.W.2d 560 (S.D. 1987) is controlling. In *Hurst*, we stated:

[O]ne who receives and retains the consideration or benefit of a contract cannot occupy the position of surety. Hence, a person who makes a contract for the purpose of securing to himself a benefit rather than for securing to another a benefit, may be classified as a principal.

*Id.* at 563 (internal citation omitted). Family reasons, under *Hurst*, that no surety relationship existed because Carol obtained personal benefits in executing the mortgage on the Black Hawk property. Specifically, Family alleges that Carol used a significant portion of the loan for personal expenditures.[4]

[¶ 16.] Finally, Family argues Carol's claim is time-barred under SDCL 29A–3–801(a). This statute provides:

A personal representative upon appointment may publish a notice to creditors once a week for three successive weeks in a legal newspaper in the county in which the proceeding is pending giving the personal representative's name and address and notifying creditors of the decedent to present their claims within four months after the date of the first publication of the notice or the claim may be barred.

[¶ 17.] Estate contends Carol had a timely and valid claim against the estate because John's debts passed to the estate pursuant to SDCL 29A–3–807 and 29A–3–808. First Finance's claim was pending at the time of John's death. Estate claims it was faced with the situation in which the debt evidenced by John's note passed to the estate, yet a lawsuit was pending to foreclose on the property that was pledged by Carol, not a signatory to the note. Estate maintains that its duty to pay the note was not relinquished by the foreclosure action.

[¶ 18.] The question of when a claim could be presented by Carol only occurred during the pendency of the foreclosure

---

3. SDCL 21–47–15 provides: " 'In any foreclosure of a mortgage upon real estate by action, the holder of the mortgage may purchase the mortgaged premises, or any part thereof, at such foreclosure sale, if the holder bids fairly and in good faith, and bids the fair and reasonable value thereof[.]' "

4. Family argues that Carol used the proceeds from the loan to retire a judgment entered against her in the amount of $7200, to extinguish a county lien against the Black Hawk property, to pay off several credit cards, and to buy new furniture.

action, and it naturally follows that the timetable of the foreclosure action would determine when the claim, Carol's right to redeem, would occur. Since the foreclosure action was pending at John's death, the publication deadlines pursuant to SDCL 29A–3–801(a) do not apply. Estate concludes that the payment of John's debt by Carol through the foreclosure and sale of her property obligates it for John's debt; and accordingly, Carol may recover from the estate the amount necessary to redeem her property.

[¶ 19.] Estate relies on Ogan v. Ogan, 122 Ohio App.3d 580, 702 N.E.2d 472 (OhioCt.App. 1997) to support its argument that Carol is entitled to recover the sum necessary to redeem the Black Hawk property. In *Ogan*, a couple married in 1991. Shortly after the marriage, husband and wife entered into a transaction where husband signed a note with a bank. Husband and wife executed a mortgage securing the note with a specific piece of property. Two days after the bank transaction, husband conveyed his interest in the property to himself and his wife "for their joint lives, remainder to the survivor of them." *Id.* at 473. After her husband died, wife continued to pay on the note for some time. Later, she sold the property and paid off the note. Presenting a claim to her husband's estate, wife claimed she was entitled to reimbursement since she had paid off the note. The estate rejected her claim. Addressing the same issue pending in the appeal before this Court, the Ohio court stated:

> Decedent had an obligation to pay the bank the amount owed on the note. Upon decedent's death, appellant, as executor of the estate, accepted the duty to pay decedent's debts. [Wife's] payment of the debt owed on the note relieved the bank of its claim against the estate. However, by paying the debt, [wife] took the place of the bank and

became a creditor against the estate. [Wife], as a creditor against the estate, had the legal right to present a claim against the estate.

*Id.* at 475 (internal citations omitted).

[¶ 20.] The Ohio court affirmed the wife's right to reimbursement. We find the reasoning of the Ohio court persuasive and dispositive on this issue, and thus, we do not reach the suretyship issue raised by Family. Accordingly, we hold that the circuit court did not err in concluding that Carol has a valid claim against John's estate.

[¶ 21.] Carol's claim arose out of a suit that was pending at the time of John's death, the exact situation contemplated by SDCL 29A–3–804(b). Carol stepped into the shoes of First Finance when it initiated a foreclosure action against the Black Hawk property. The debt was not extinguished by foreclosure. It became a debt of the estate to Carol, as opposed to a debt of the estate to First Finance, an action pending at the time of John's death. As to Family's claim that the foreclosure extinguished Carol's claim, redemption eliminates the effect of a foreclosure sale and restores the property to the owner. *See Donovan v. Farmers Home Admin.*, 19 F.3d 1267 (8thCir.1994). We affirm the circuit court on this issue.

ISSUE TWO

[¶ 22.] **Whether the trial court erred in awarding attorneys' fees and the personal representative's fees.**

[¶ 23.] The court approved $39,466.13 in attorneys' fees and $5,325 in personal representative fees. Family made a general objection that the bills were exorbitant. Subsequently, the attorneys filed an itemized statement with the court. The court reviewed and approved

the fees for both the attorneys and the personal representative. Family claims the circuit court erred in awarding these fees. As the party challenging the reasonableness of fees, Family bears the burden to show excessive compensation. *In re Estate of Wagner*, 253 Neb. 498, 571 N.W.2d 76, 78 (1987).

■ [¶ 24.] Family made general, rather than specific, objections to the award. Absent specific objections, this Court examines the award to determine "whether the fee is 'so exorbitant and wholly is disproportionate to the services performed as to shock the conscience.'" In re *Disc. of Dorothy*, 2000 SD 23, ¶ 23, 605 N.W.2d 493, 500 (citations omitted). The circuit court stated its rationale in awarding the requested amount in fees:

> The Court finds that these attorney's fees are indeed reasonable. That the firm of Lynn, Jackson represented the personal representative who was forced to defend the petition for allowance of the claim and the opposition launched against that petition for allowance of the claim of Carol Catron and that was costly. Attorney fees were at [$]22,000 in August. Now, they're at [$]39,000.... There has been a significant amount of litigation generated since August.

Moreover, the circuit court did not adopt Family's argument that estate's attorneys were representing Carol, rather than the personal representative. We find no abuse of discretion in this fee award.

[¶ 25.] We affirm.

[¶ 26.] MILLER, Chief Justice, and SABERS, Justice, and STEELE, Circuit Judge, concur.

[¶ 27.] AMUNDSON, Justice, concurs in part and dissents in part.

[¶ 28.] SRSTKA, Circuit Judge, for KONENKAMP, Justice, disqualified.

[¶ 29.] STEELE, Circuit Judge, for GILBERTSON, Justice, disqualified.

AMUNDSON, Justice (concurring in part and dissenting in part).

## ISSUE TWO

[¶ 30.] One of our basic tenets regarding attorneys' fees is that they are not to be awarded to an adverse party absent statutory authority. *Kanaly v. State*, 401 N.W.2d 551 (S.D.1987); *see also Estate of Weickum*, 317 N.W.2d 142 (S.D.1982); *Boland v. City of Rapid City*, 315 N.W.2d 496 (S.D.1982). Carol erroneously relies upon SDCL 29A–3–719 and 720 as such authority. We have stated on numerous occasions, however, that before attorneys' fees will be paid from the estate pursuant to such authority, the estate must somehow benefit from the work of the attorney submitting the bill. *Guardianship of Larson*, 1998 SD 51, ¶ 32, 579 N.W.2d 24, 29; *Estate of Lingscheit*, 387 N.W.2d 738, 741 (S.D.1986); *Engebretson v. Graff*, 69 S.D. 549, 12 N.W.2d 761, 763 (1944).

[¶ 31.] As her claim for redemption was brought to recover proceeds *from* the estate for *her* personal benefit, SDCL 29A–3–719 and 720 do not allow for attorneys' fees in this instance. Carol argues that she was attempting to protect the "intent of the testator" as her grounds for maintaining this action as benefiting the estate. Her argument is without merit as the estate contest involving the heirs had already been settled prior to this redemption claim. As this Court stated in *Estate of O'Keefe*, 1998 SD 92, ¶ 20, 583 N.W.2d 138, 142, "Woelz has not shown how the current action to prohibit Langes from sharing in the punitive damage award benefits the Estate." The same applies to Carol in this case as she has failed to show a benefit to

the estate by her personal gain through the redemption claim. Carol agreed in the settlement of the contest to a certain percentage of the estate and under the redemption claim she wants more. By allowing her to recover attorneys' fees on the redemption claim, this Court, in essence, is allowing Carol a windfall. We need not address whether the fees were excessive, as the fees incurred in the redemption claim should not have been awarded in the first place. Therefore, I would remand to the trial court to delete the attorneys' fees attributable to the redemption claim.