2002 SD 93

**John J. GLUSCIC, M.D., Plaintiff and Appellant,**

v.

**AVERA ST. LUKE'S, a South Dakota Community Hospital, Defendant and Appellee.**

**No. 22002.**

Supreme Court of South Dakota.

Argued April 24, 2002.

Decided July 31, 2002.

Roy Wise and Chester A. Groseclose of Richardson, Groseclose, Wyly, Wise & Sauck Aberdeen, South Dakota, Richard

G. Braman of Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minnesota, Attorneys for plaintiff and appellant.

Edwin E. Evans and Melissa C. Hinton of Davenport, Evans, Hurwitz & Smith Sioux Falls, South Dakota, Attorneys for defendant and appellee.

SEVERSON, Circuit Judge.

[¶ 1.] John Gluscic, M.D. (Gluscic) appeals the circuit court's final judgment of June 25, 2001, denying his application for a preliminary injunction and for a permanent injunction enjoining Avera St. Luke's (ASL) from revoking his medical staff privileges. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

[¶ 2.] On June 26, 1997, the Board of Trustees of ASL in Aberdeen, South Dakota voted to close the medical/dental staff to new applicants for staff privileges for the performance of laminectomies, closed fractures of the spine and spinal fusions. In addition, the Board voted to close the medical/dental staff for orthopedic surgery privileges except for two orthopedic surgeons already in the recruitment process.

[¶ 3.] In 1998, nearly a year after the Board voted to close the staff, Orthopedic Surgery Specialists (OSS) recruited Dr. John Mahan (Mahan), a spine-fellowship trained orthopedic surgeon. Despite notice that the staff at ASL was closed for orthopedic surgery privileges, Mahan proceeded with his move to the Aberdeen area to join OSS. At that time, Mahan requested an application for staff privileges from ASL. ASL refused the request asserting that the staff was closed to new applicants in this area.

### Mahan Litigation

[¶ 4.] In response to the refusal of his request for an application for staff privi-

leges, Mahan and other OSS physicians commenced an action against ASL in September 1998. The plaintiffs challenged the June 1997 Board decision closing staff privileges to new orthopedic surgeons. Mahan sought a permanent injunction requiring ASL to provide an application for medical/dental staff privileges to all physicians requesting one.

[¶ 5.] On June 30, 1999, the circuit court entered a judgment granting Mahan's motion for a permanent injunction. The court further ordered that ASL provide applications to Mahan and any other doctor in association with OSS and that it process the applications in accordance with the standards and procedures set forth in the medical staff bylaws.

[¶ 6.] ASL appealed the circuit court's June 30, 1999, judgment. ASL filed motions to stay the judgment which were denied. Accordingly, pursuant to the circuit court's mandatory injunction, ASL provided an application for staff privileges to Mahan.

### Dr. Gluscic's Application

[¶ 7.] During the course of the Mahan dispute, OSS recruited another orthopedic surgeon, Dr. Gluscic, to join its practice. On July 5, 2000, Gluscic requested an application for medical/dental staff privileges from ASL. ASL provided an application to Gluscic pursuant to the circuit court's mandatory injunction. ASL also sent a letter to Gluscic alerting him that the application was being provided pursuant to the injunction which had been appealed. The letter further advised that, "[t]o the extent that the Supreme Court modifies or reverses the trial court judgment, your application and any ensuing hospital privileges granted to you will be subject to that decision."

[¶ 8.] On September 2, 2000, Gluscic submitted his completed application to ASL. Gluscic received temporary privileges in orthopedic surgery on November 28, 2000. At its December 2000 meeting, ASL's Board granted privileges to Gluscic subject to the decision of the South Dakota Supreme Court to the extent that it might modify or reverse the circuit court's June 30, 1999, judgment. Gluscic was advised in a letter from ASL that his privileges were granted pursuant to the circuit court's June 30, 1999, judgment which had been appealed. The letter further advised Glusic that "[t]o the extent that the Supreme Court [modifies] or [reverses] the circuit court judgment, your application and any ensuing hospital privileges granted to you will be subject to that decision."

### Effect of Reversal of Injunction: Present Controversy

[¶ 9.] On January 10, 2001, this Court issued its decision in *Mahan v. Avera St. Luke's*, 2001 SD 9, 621 N.W.2d 150. In that decision, this Court held that the ASL Board's closure of the staff was reasonable, in good faith, and a valid exercise of the Board's authority to make business decisions to meet the healthcare needs of the community. *Mahan*, 2001 SD 9 at ¶ 32, 621 N.W.2d at 160. Additionally, this Court determined that the staff closure did not constitute a breach of the medical/dental staff bylaws. *Mahan*, 2001 SD 9 at ¶ 35, 621 N.W.2d at 161. Accordingly, this Court reversed the circuit court's June 30, 1999, judgment and also reversed the circuit court's issuance of a permanent injunction. *Id.*

[¶ 10.] Pursuant to this court's decision, the circuit court entered a final judgment on April 23, 2001. The court vacated its June 24, 1999, memorandum decision, its June 30, 1999, judgment and its permanent injunction and entered a final judgment in favor of ASL.

[¶ 11.] Following this Court's decision in *Mahan*, the ASL Board approved a resolution rescinding Gluscic's staff privi-

leges. In response, Gluscic's attorneys advised ASL's counsel that Gluscic planned to apply for a temporary restraining order. Gluscic filed his verified complaint and application for a temporary restraining order, preliminary injunction and permanent injunction on April 27, 2001. Gluscic alleged that ASL's revocation of his medical staff privileges was in violation of the medical staff bylaws.

[¶ 12.] A telephonic hearing took place on April 27, 2001, at which time the circuit court issued a temporary restraining order enjoining ASL from rescinding Gluscic's staff privileges. The court found that the complaint and motion for temporary restraining order were "based on good cause, [and] that Dr. Gluscic will be irreparably injured if he is not permitted to practice orthopedic surgery in the defendant hospital, which is the only general hospital within ninety miles of Aberdeen, during pendency of this action."

[¶ 13.] After reviewing the parties' briefs and hearing argument, the circuit court denied Gluscic's request for a preliminary injunction. After a final hearing on June 13, 2001, the circuit court entered its findings of fact, conclusions of law, and final judgment denying Gluscic's application for a preliminary and permanent injunction. The court found that, pursuant to Article III, Section 2 of the medical staff bylaws, the hospital could not revoke staff privileges without cause. However, the court went on to find that the hospital had effectively been forced by issuance of the injunction to process Gluscic's application for privileges. Accordingly, the court held that, on vacation of that injunction, the hospital could "revoke those privileges with impunity."

[¶ 14.] On agreement of the parties, ASL's right to withdraw Gluscic's staff privileges is stayed until this Court issues its final decision in this matter. This is due to the potential for irreparable injury to Gluscic should his privileges be revoked. Gluscic brings this appeal of the circuit court's denial of his application for a preliminary and permanent injunction raising the following issue: Does the vacation of the injunction allow ASL to rescind the staff privileges granted to Dr. Gluscic while the injunction was in force?

## STANDARD OF REVIEW

[¶ 15.] The circuit court's decisions on questions of law are fully reviewable by this Court with no deference to the circuit court. *Davis v. Knippling,* 1998 SD 31, 576 N.W.2d 525; *Dinsmore v. Piper Jaffray, Inc.,* 1999 SD 56, ¶ 15, 593 N.W.2d 41, 45. This Court formerly reviewed documentary evidence and deposition testimony under the de novo standard. However,

> SDCL 15-6-52(a), recently amended, provides that "[f]indings of fact, whether based on oral or documentary evidence, may not be set aside unless clearly erroneous[.]" Under this standard, "[c]lear error exists only when, upon a review of all the evidence in the record, we are left with a definite and firm conviction a mistake has been made."

*Faulk v. Faulk,* 2002 SD 51 ¶ 9, 644 N.W.2d 632, 634 (quoting *Estate of Catron,* 2001 SD 57, ¶ 11, 627 N.W.2d 175, 177 (citing *Even v. City of Parker,* 1999 SD 72, ¶ 9, 597 N.W.2d 670, 674)). Accordingly, any factual findings based on documentary evidence or deposition testimony will be reviewed under the clearly erroneous standard.

## ANALYSIS AND DECISION

[¶ 16.] Gluscic contends that the circuit court erred when it held that the mandatory permanent injunction issued in *Mahan* was void *ab initio* because it extinguished an independent property right he

held in his staff privileges. Specifically, the narrow issue on appeal is as follows:

(1) Does the vacation of the injunction allow ASL to rescind hospital privileges granted to Dr. Gluscic while the injunction was in force?

### Principles of Appellate Procedure

[¶ 17.] Focusing on the relevant rules of appellate procedure, it is well-established that a "judgment reversed by a higher court is 'without any validity, force or effect, and ought never to have existed.'" *Wheeler v. John Deere Co.,* 935 F.2d 1090, 1096 (10th Cir.1991) (quoting *Butler v. Eaton,* 141 U.S. 240, 244, 11 S.Ct. 985, 35 L.Ed. 713 (1891)). The *Wheeler* Court further stated that "[t]o 'reverse' a judgment means to 'overthrow, vacate, set aside, make void, annul, repeal, or revoke it.'" *Id.* (quoting Black's Law Dictionary 1319 (6th ed 1990)).

[¶ 18.] The United States Court of Appeals for the Eighth Circuit has addressed the effects of an erroneous judgment stating that "[a] judgment vacated on appeal is of no further force and effect." *Riha v. International Tel. & Tel. Corp.,* 533 F.2d 1053, 1054 (8th Cir.1976)(citing *Simpson v. Motorists Mut. Ins. Co.,* 494 F.2d 850 (7th Cir.), *cert. denied,* 419 U.S. 901, 95 S.Ct. 184, 42 L.Ed.2d 147 (1974)).

[¶ 19.] The United States Supreme Court has also addressed the resolution of erroneously issued judgments by stating that:

[T]he principle, long established and of general application, that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby. This right, so well founded in equity, has been recognized in the practice of the courts of common law from an early period....

That a course of action so clearly consistent with the principles of equity is one proper to be adopted in an equitable proceeding goes without saying. It is one of the equitable powers, inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process.

*Arkadelphia Milling Co. v. St. Louis Southwestern Ry. Co.,* 249 U.S. 134, 145–146, 39 S.Ct. 237, 63 L.Ed. 517 (1919); *See also Bank of the United States v. Bank of Washington,* 6 Pet. 8, 31 U.S. 8, 8 L.Ed. 299, 304 (1832); *Erwin v. Lowry,* 7 How. 172, 48 U.S. 172, 12 L.Ed. 655, 660 (1849); *Northwestern Fuel Co. v. Brock,* 139 U.S. 216, 11 S.Ct. 523, 35 L.Ed. 151 (1891).

[¶ 20.] This Court has spoken on the issue by holding that "[t]he mandate of this court ordering a reversal of a judgment without other direction nullifies the judgment, findings of facts, and conclusions of law, and *leaves the case standing as if no judgment or decree had ever been entered." Janssen v. Tusha,* 67 S.D. 597, 601, 297 N.W. 119, 120 (1941)(emphasis added). *See also* 5 AmJur2d *Appellate Review* § 861 (2002) ("A complete reversal generally annuls the judgment below, and the case is put in the same posture in which it was before the judgment was entered. Thus, after the reversal on appeal, the parties' rights are left wholly unaffected by any previous determination that was reversed, so that a judgment that is reversed and remanded stands as if no trial has yet been held.").

[¶ 21.] Furthermore, this Court has stated that "[i]t is also clear that, upon the reversal of a judgment, the law raises an obligation on the part of the party who received benefits from its enforcement to restore those benefits to the adverse par-

ty." *Pendergast v. Muns,* 59 S.D. 135, 142, 238 N.W. 344, 347 (1931).

[¶ 22.] Accordingly, although Gluscic was not a party to the Mahan lawsuit, his employer was a party and Gluscic's application was processed pursuant to the mandatory injunction which was appealed. Gluscic was advised his privileges were subject to the decision in the Mahan litigation, but he accepted the benefits of the injunction. In the present case, the Board was ordered via injunction to process applications. Because the judgment has been reversed and the injunction vacated, the above-mentioned authority provides that it is "as if no judgment or decree had ever been entered." *Janssen,* 67 S.D. at 601, 297 N.W. at 120. In order for the above language to have any effect in the present case, ASL must be allowed to rescind Gluscic's privileges at this time. This action would put the hospital in the same position it would be in had the injunction never been issued in addition to upholding the decision in *Mahan* allowing the Board to make administrative business decisions such as closing staff privileges.

[¶ 23.] Our decision on this issue eliminates the need to address the other issues raised on appeal.

[¶ 24.] Affirmed.

[¶ 25.] GILBERTSON, Chief Justice, and AMUNDSON and KONENKAMP, Justices, and GORS, Acting Justice, concur.

[¶ 26.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

[¶ 27.] SEVERSON, Circuit Judge, for SABERS, Justice, disqualified.