2002 SD 128

**In the Matter of the ESTATE OF Anna K. HEIBULT, Deceased.**

**No. 22290.**

Supreme Court of South Dakota.

Argued Aug. 28, 2002.

Decided Oct. 16, 2002.

have the effect of interfering with review of the judgment.

Gregory T. Brewers of Frieberg, Zimmer, Duncan, & Nelson, LLP, Beresford, for appellants C. Heibult, G. Scott and M. Silverlake.

Ronald A. Parsons, Jr., A. Russell Janklow of Johnson, Heidepriem, Miner, Marlow and Janklow, Sioux Falls, for appellee R. Heibult.

GILBERTSON, Chief Justice.

[¶ 1.] Anna K. Heibult executed a will in 1990 devising a larger portion of her property to Ronald Heibult, the youngest of her four children. In 1991, on a visit to California to see the three older siblings, Anna executed a second will and trust dividing the property equally. Neither the original nor a signed copy of the second will was ever found. When Anna died in February 2000, the three older siblings petitioned for adjudication of intestacy. The circuit court, however, granted Ronald's petition to probate the 1990 South Dakota will. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Anna and George Heibult were married for over fifty years. During these years, they lived on their farm near Parker, South Dakota, and raised four children: Calvin, Georgiann, Melba, and Ronald. Ronald was the only sibling to remain in South Dakota. He farmed with his father until George's death in 1989. Ronald then took over the operation of the farm and cared for his mother.

[¶ 3.] After her husband's death, Anna wished to draft a new will and sought the advice of Attorney John E. Burke. Burke had represented the couple since the 1950's. Burke testified at trial:

> She came, Anna came in and asked me to draw a new will. And she told me that both before and after her husband's death Ron had always been there when she needed him. Everybody else had moved to California and she wanted to give him a little, some more than she was giving the rest of the children, his brother and sisters.

In accordance with Anna's instructions, Burke drafted a will that left an undivided one-half interest in the "home place" and another quarter section of the Heibult farm entirely to Ronald. The will also provided that Ronald could purchase the other half by paying the appraised value to the other three siblings over a period of twenty years. The rest of Anna's estate, including the remaining eighty acres of the farm, was divided equally among all four siblings. After execution, the will remained in Burke's possession until Anna's death in February 2000.

[¶ 4.] In June 1991, Anna traveled to California to visit Calvin, Georgiann, and Melba. During her visit, the subject of Anna's will was discussed. Ethel Wolleson, Georgiann's neighbor and good friend, testified that she had shown Anna a copy of her own will, which divided her estate equally among her children. According to Ethel, Anna had immediately exclaimed that she wanted the same thing. The next morning, Ethel took Anna to see Ethel's attorney, accompanied by Anna's three children. There, Anna paid $850 to attorney Charles Blek to draw up a new will

and a trust, which divided her property equally among the four Heibult siblings and revoked all previous wills. The following morning, Anna, Ethel and the three siblings returned to Blek's office to execute the will.

[¶ 5.] The day after the California will was executed, Anna flew home to South Dakota. Instead of returning alone as she had planned, Georgiann and Ethel accompanied her. Immediately upon arrival, Georgiann and Ethel took Anna to the bank to ensure that Anna put the new will in her safe deposit box. Next, Georgiann and Ethel drove Anna to the county courthouse to convey the deeds to the farm property into the trust drawn up by Blek. Anna refused, however, to allow Georgiann or Ethel to come in with her. When she returned to the car, she told Georgiann and Ethel that she had transferred the deeds and she showed them a receipt. That evening, the three started a fire in the backyard, purportedly to "celebrate" by burning the 1990 South Dakota will.

[¶ 6.] It appears however, that Anna fooled them all. While she did burn several papers in the fire, none was the 1990 South Dakota will, as she led Georgiann and Ethel to believe. Instead, the original 1990 South Dakota will remained, as it always had been, in Burke's possession. In addition, neither the original nor any signed copy of the 1991 California will was ever found in Anna's safe deposit box or elsewhere.[1] The trust was found in the safe deposit box, but no property had been placed in the trust to fund it. Instead of considering the possibility that Anna herself had removed and destroyed the 1991 California will, or possibly never had placed it there to begin with, Ronald's siblings claim Ronald had ample opportunity to remove and destroy it. Both Calvin,[2] who moved back to South Dakota in 1993, and Ronald had keys to the safe deposit box. But the bank's safe deposit admission record for box 338 shows the only two people to have accessed the box since 1991 were Anna and Calvin. Finally, when Anna had visited the courthouse seemingly to transfer the deeds to her farm into the trust, she had instead paid $5 and received two copies of her husband's death certificate.

[¶ 7.] On December 29, 1993, Anna again met with Burke regarding her estate. Burke testified at trial that Anna had relayed the events surrounding the execution of the 1991 California will. According to Burke, Anna told him that she had deliberately misled Georgiann and Ethel into thinking she was burning the 1990 South Dakota will, when in fact, she had burned the 1991 California will. Then Anna gave Burke the unrecorded deeds[3] and explained how she had also misled Georgiann and Ethel at the courthouse. Burke testified Anna had asked what she needed to do to ensure the 1990 South Dakota will would remain in effect. Burke advised her that because the 1991 California will had been burned with intent to revoke it, and the 1990 South Dakota will was still in his possession, she needed to do nothing further.

[¶ 8.] Anna died on February 29, 2000. Georgiann, Melba, and Calvin filed a petition for adjudication of intestacy, determination of heirs, and appointment of a personal representative. Ronald resisted the petition for intestacy and filed a petition for formal probate of the 1990 South Dako-

---

1. Blek had an unsigned draft of the 1991 California will in his possession.

2. Calvin was the first person to gain access to the safe deposit box after Anna's death.

3. It is undisputed that the unrecorded deeds, drawn up by Ethel's attorney in California, were found in Burke's possession after Anna's death.

ta will. None of the parties dispute that Anna was of sound mind and acted of her own free will during the times in question. No allegations of undue influence were made.

[¶ 9.] After depositions were taken in California, Burke believed it would be necessary for him to be a witness in the case and arranged for attorney Russell Janklow to represent Ronald. Ronald, however, never believed that he was represented by Burke at all. Ronald testified, "I did not hire Jack Burke. Jack Burke is my mom's lawyer. I did not hire him. He's working with my mom's estate. I have nothing to do with it. I never hired him once." Nevertheless, Ronald's siblings filed a motion to exclude Burke's testimony pursuant to SDCL 19–1–3. The circuit court denied the motion, holding the statute did not prevent Burke from testifying when he had ended his representation of Ronald.[4] On August 31, 2001, the court granted Ronald's petition to probate the 1990 South Dakota will. Ronald's siblings raise the following issues on appeal:

1. Whether John Burke's testimony was admitted in violation of SDCL 19–1–3.
2. Whether the 1991 California will was revoked.
3. Whether there was sufficient evidence to establish the revival of the 1990 South Dakota will.

## STANDARD OF REVIEW

[¶ 10.] On appeal in a will contest, "all conflicts in the evidence must be resolved in favor of the trial court's findings." *Estate of Burk,* 468 N.W.2d 407, 409 (S.D.1991). We will not reweigh or resolve conflicts in the evidence or pass on the credibility of the witnesses. *Estate of Elliott,* 537 N.W.2d 660, 662 (S.D.1995)

4. Burke passed away on November 28, 2001.

(internal citations omitted). The proponents of a will are entitled to have all reasonable inferences of fact drawn in their favor. *Estate of Blake,* 81 S.D. 391, 394, 136 N.W.2d 242, 244 (1965).

[¶ 11.] Contrary to both parties' assertions herein, this Court no longer reviews documentary evidence *de novo.* SDCL 15–6–52(a), as amended, provides that "[f]indings of fact, whether based on oral or documentary evidence, may not be set aside unless clearly erroneous...." Accordingly, "[c]lear error exists only when, upon a review of all the evidence in the record, we are left with a definite and firm conviction a mistake has been made." *Estate of Catron,* 2001 SD 57, ¶ 11, 627 N.W.2d 175, 177 (citation omitted).

## ANALYSIS AND DECISION

[¶ 12.] **1. Whether John Burke's testimony was admitted in violation of SDCL 19–1–3.**

[¶ 13.] On the morning of trial, Ronald's siblings filed a motion to prevent Burke from testifying. SDCL 19–1–3 provides, in pertinent part:

When an attorney is a witness for his client upon any trial except as to merely formal matters such as the attestation or custody of an instrument or the like, he shall not further participate in such trial. This section shall not apply when such attorney's testimony is offered in answer to evidence received on behalf of the other party and it shall appear to the satisfaction of the court that such attorney had no reason to anticipate the necessity of his being a witness.

Ronald's siblings contend Burke's testimony was inadmissible due to his continued representation of Ronald after interrogatories were answered. We disagree.

[¶ 14.] Burke did not represent Ronald after testifying, as Ronald's siblings allege. While Burke may have assisted Ronald in preparing his answers to interrogatories, Burke was not personally testifying under oath at that time. There is nothing in the record to indicate Burke's deposition was taken before trial.[5] The first time he testified under oath was during the trial itself, at which time Janklow had replaced him as Ronald's attorney. As noted by the trial court, SDCL 19–1–3 simply states an attorney that testifies as a witness can no longer represent his client in that case. *See Ward v. Lange*, 1996 SD 113, ¶ 28, 553 N.W.2d 246, 253 (citation omitted). The statute, however, does not indicate that when an attorney is involved in the case, he may *never* testify as a witness. If that were so, there would be no need for that specific statute.

[¶ 15.] Ronald's siblings also allege Burke perjured himself and improperly prolonged his representation of Ronald. Ronald originally maintained Anna had told him she had never signed the California will. Burke, however, testified at trial that Anna had told him she had signed it, but had subsequently burned it.[6] Ronald's siblings claim Burke changed his story after the California depositions, because it became clear that Ronald's "original story would not be credible." Given Anna's other inconsistent statements and actions regarding her wills, it seems entirely plausible that she told her son one story while telling her attorney another. Furthermore, as stated by the trial court, if Ronald's siblings "had a problem with Mr.

Burke's involvement in the discovery and pretrial proceedings, they should have moved to disqualify him or remove him at that stage, not waited in ambush and attempted to prevent his testimony from being heard [at trial]." (citing *Rumpza v. Donalar Enterprises, Inc.*, 1998 SD 79, ¶ 31, 581 N.W.2d 517, 524). Finally, Burke's testimony was not overly influential in the trial court's determination, given the presumption triggered in failing to locate the 1991 California will (see Issues 2 and 3).

[¶ 16.] **2. Whether the 1991 California will was revoked.**

[¶ 17.] South Dakota law provides that a will is revoked:

> By performing a revocatory act on the will, if the testator performed the act with the intent and for the purpose of revoking the will.... For purposes of this paragraph, "revocatory act on the will" includes burning, tearing, canceling, obliterating, or destroying the will or any part of it, whether or not the revocatory act touched any of the words on the will.

SDCL 29A–2–507(a)(2). In addition, "[t]he failure to find a will after a careful and exhaustive search raises a presumption that the testator destroyed it with the intent to revoke it." *Matter of Modde's Estate*, 323 N.W.2d 895, 898 (S.D.1982). Thus, when neither the original nor any signed copy of the 1991 California will could be located, it was presumed that Anna had destroyed the will with the intent to revoke it. *See Matter of Estate of*

---

5. Ronald's siblings state, "After his own deposition, Attorney Burke was again advocating Ronald's position...." Yet, we can find no copy of Burke's deposition in the appeal record.

6. We find Appellants' "judicial estoppel" argument regarding the contradiction of

Burke's testimony with that of Ronald to be unpersuasive. *See Watertown Concrete Products, Inc. v. Foster*, 2001 SD 79, ¶ 10, 630 N.W.2d 108, 112 (holding judicial estoppel only applicable where party "successfully maintains a certain position in a legal proceeding.").

*Long,* 1998 SD 15, ¶ 14, 575 N.W.2d 254, 256.

[¶ 18.] Ronald's siblings have not successfully rebutted the presumption that the 1991 California will had been revoked. Anna maintained personal possession of the original and only signed copy, but neither was found after her death. According to Attorney Burke, Anna said she had burned the 1991 California will immediately after returning to South Dakota. Conversely, Anna never made any attempt to retrieve and destroy the 1990 South Dakota will, even though she had the perfect opportunity to do so in 1993 when she visited Burke's office. Even absent Burke's testimony, Ronald's siblings have not offered any evidence that the 1991 California will should be operable. Indeed, they acknowledged its revocation by petitioning for an adjudication of intestacy and alleging in paragraph eight of their petition that "there are no unrevoked testamentary instruments." Therefore, we do not deem the trial court's determination to be error.

[¶ 19.] **3. Whether there was sufficient evidence to establish the revival of the 1990 South Dakota will.**

[¶ 20.] There is no dispute that the 1990 South Dakota will was revoked upon execution of the 1991 California will. *See* SDCL 29A–2–507(a)(1). Therefore, we must ascertain whether, the 1990 South Dakota will was revived upon revocation of the subsequent will.

[¶ 21.] Under common law, the destruction of a will containing a revocatory clause revived the former will, so long as it was preserved uncanceled. 79 Am. Jur.2d *Wills* § 689 n. 35 (1975). South Dakota law, however, provides:

> If a subsequent will that wholly revoked a previous will is thereafter revoked by a revocatory act under § 29A–2–

507(a)(2), the previous will is revived only if it is evident from the circumstances of the revocation of the subsequent will or from the testator's contemporary or subsequent statements that the testator intended the previous will to take effect as executed.

SDCL 29A–2–509(a). As noted above, Ronald's siblings were unable to successfully rebut the presumption that Anna had destroyed the 1991 California will with the intent to revoke it. There is also a presumption in favor of finding testacy over intestacy. *Estate of Martin,* 2001 SD 123, ¶ 19, 635 N.W.2d 473, 476 (citing 79 Am. Jur.2d *Wills* § 745 (1975)). As a result, the circuit court determined that Anna had intended the 1990 South Dakota will to be revived.

[¶ 22.] It is evident from the circumstances surrounding the 1991 California will's revocation, as well as from Anna's subsequent statements, that she intended the 1990 South Dakota will to take effect as executed. Anna intentionally misled Georgiann and Ethel regarding both wills. Whether Anna actually burned the 1991 California will in place of the 1990 South Dakota will, as testified by Burke, is less significant than Anna's deception regarding the issue. The 1990 South Dakota will was never burned, the 1991 California will was never found, the deeds were never transferred, and the trust was never funded. All of this was in direct contradiction to Anna's representations to Georgiann, Ethel, Melba, and Calvin.

[¶ 23.] Ronald's siblings argue that it makes little sense for Anna to pay $850 for a will she did not intend to keep. Yet, $850 may be a small price to pay for a decade of family accord. Ronald was a natural object of Anna's bounty, given he was the only child to remain in South Dakota, actively farm with his father, and care for his parents. *See Rowett v.*

*McFarland,* 394 N.W.2d 298, 305 (S.D. 1986). In any event, it seems clear that Anna knew exactly what she was doing; neither party has alleged she was not of sound mind. *See Estate of Klauzer,* 2000 SD 7, ¶ 9, 604 N.W.2d 474, 477 (stating intent of the testator is ultimate factor in settling will contest). Therefore, given the entirety of the evidence, this Court is not left with a definite and firm conviction that a mistake has been committed. We deem the 1990 South Dakota will revived and affirm the trial court's admission of it to probate.

[¶ 24.] SABERS, KONENKAMP, and ZINTER, Justices, and AMUNDSON, Acting Justice, concur.