2004 SD 117

Terry L. **BOXDORFER**; John Brakss and Marlene Brakss; Jerry Brown; Dave T. Davidson and Alice H. Davidson; Ed A. Fahlsing and Betty Fahlsing; Michael A Gorman; A. Dean Gretschmann and Judith L. Gretschmann; Robert Hartford and Sara K. Hartford; Joanne Knight; Leonard P. Kuck and Billie J. Kuck; Lyle E. Lutzka and Ruby C. Lutzka; Henry E. Maddocks and Jodi H. Maddocks; Randy Morris; Bruce Peterson; Walt Reinert and Colleen Reinert; Edward E. Spies; James C. Spies, Ernest Steffen, David Steffen and Larry Steffen, d/b/a Steffen Brothers, Inc.; Darold Swank and Florence Swank; and Steve Wegener; jointly and severally, **Petitioners and Appellants,**

v.

**SULLY COUNTY BOARD OF ADJUSTMENT** Sully County, South Dakota, **Respondent and Appellee,**

and

Milt Morris, Jim Blair, Ray Beck, John Nystrom, Norm Nystrom, Kevin Randall, Jim Schumacher, Harvey Sheehan, Brian Tracy, Ron Young, Gene Weinreis, Don Ramler, and Les Wulf, **Intervenors and Appellees.**

No. 23057.

Supreme Court of South Dakota.

Considered on Briefs June 1, 2004.

Decided Oct. 20, 2004.

Brad A. Schreiber of Day, Morris & Schreiber, Belle Fourche, South Dakota, Attorneys for petitioners and appellants.

Merlin Voorhees Sully County States Attorney, Onida, South Dakota, Attorney for respondent and appellees.

Mark A. Moreno and Charles P. Schroyer of Schmidt, Schroyer, Moreno & Lee, Pierre, South Dakota, Attorneys for intervenors and appellees.

JOHNSON, Circuit Judge.

[¶ 1.] This is an appeal taken from a judgment and order entered by the circuit court upholding the issuance of a special use permit for a drag strip located on agricultural land. We affirm.

## FACTS

[¶ 2.] Milt Morris (Morris) and Jim Blair (Blair) applied to the Sully County Board of Adjustment (the Board) for a special use permit, seeking permission to construct and operate a drag strip on their land in southwestern Sully County. The Board conducted an evidentiary hearing allowing comment by both proponents and opponents to the project. The Board met on two further occasions and some of the members voiced their opinions in support of and in opposition to the application. On June 13, 2003, the Board voted 4–1 in favor of the application.

[¶ 3.] Area residents opposed to the permit sued the Board in circuit court, pursuant to SDCL 11–2–61, rather than

appeal to the Sully County Board of Commissioners.[1] Morris, Blair and the adjoining landowners intervened in the action. The circuit court listened to the testimony of several of the Board members, reviewed the record and upheld the Board's decision.

[¶ 4.] Appellants raise two issues on appeal. They contend that the Board acted illegally when it granted a special use permit for a specifically excluded use and, alternatively, that the evidence is insufficient to support the decision.

## ISSUES

Whether a special use permit may be issued for a specifically excluded use.

Whether sufficient evidence exists to support the issuance of the permit.

## STANDARD OF REVIEW

[¶ 5.] We adhere to the standard of review restated in *Tisdel v. Beadle County Board of Commissioners*, 2001 SD 149, 638 N.W.2d 250. We review findings of fact under the clearly erroneous standard. *Id.* at ¶ 5, 638 N.W.2d at 252 (citing *Coyote Flats, L.L.C. v. Sanborn County Comm'n*, 1999 SD 87, ¶ 7, 596 N.W.2d 347, 349). This Court does not analyze whether it would have made the same finding as the trial court "but rather we look at 'whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed.'" *Tisdel*, at ¶ 5, 638 N.W.2d at 252 (citing *Estate of Roehr*, 2001 SD 85, ¶ 4, 631 N.W.2d 600, 601). This Court, however, does not give deference to the legal conclusions of the circuit court in cases where it is reviewing the decisions of a county board. *Id.*

## ANALYSIS AND DECISION

### ISSUE ONE

[¶ 6.] **Special use permit for drag strip on Agricultural District B property.**

[¶ 7.] The Sully County Zoning Ordinance enumerates the uses permitted in Agricultural District B lands. Section 4–203 states:

The following uses are permitted as the principal use of any parcel of property in the Agricultural District B, except for uses excluded when located in Airport Noise zone A.

1. Agriculture, including horticulture and the raising of field crops and animal husbandry, poultry farms and kennels under performance conditions.

2. Ranch and farm dwellings and normal farm and ranch buildings.

3. Riding academies, dude ranches and other farm and ranch type recreational enterprises.

4. Golf Courses and country clubs *but not including automotive race traces [sic] or driving tracks, golf driving ranges (except as included in the operation of a golf course or country club of at least nine holes)*, outdoor theaters or similar commercial recreation enterprises.

5. Home occupation.

6. Sign not over twelve square feet in area identifying the occupants or the activity engaged in on the premises but not including billboards.

7. Recreational facilities owned or operated by government or by charitable or religious organizations.

8. Churches, schools, colleges and similar facilities.

1. The Board was comprised of four county commissioners and the zoning administrator.

9. Facilities necessary for the provision of transportation, communication, water, sewerage, electrical energy, and natural gas pipelines and their appurtenances.

Sully County Ordinance § 4–203. (emphasis added).

[¶ 8.] The above uses are allowed in Agricultural District B land as a matter of right and no specific approval is required. This section not only permits these activities, but when read with other relevant sections of the ordinance, also prohibits activities not listed. Sully County Ordinance § 1–109 reads:

Any use that is not specifically permitted in a district as a principal use, an accessory use or a conditional use, is hereby specifically prohibited. *In the regulations for some zones specific excluded uses are enumerated for clarification of intent, but such lists of excluded uses are not to be interpreted as including all excluded uses.* (emphasis added).

[¶ 9.] The ordinance specifically excludes "automotive race traces [sic] or driving tracks" as a permitted use in Ag B property. We believe, however, that this phrase appears in Section 4–203(4) for the purpose of clarifying intent and its mention was not intended to make race tracks any more prohibited than any other use not specifically mentioned.

[¶ 10.] Sully County has adopted provisions which allow it to grant special use permits in certain limited circumstances where the proposed use is not allowed in a zoning district. This procedure allows for growth in undeveloped areas of the county. The underlying philosophy and the parameters of the special use permit procedure are found in Sully County Ordinance § 2–115:

It is recognized that there may be extensive areas of undeveloped land upon which the planned type of development will not take place for a considerable time. It is therefore reasonable and proper that interim uses not in conformity with the land use plan be allowed.

The Board of Adjustment is authorized to grant special use permits for property within the district allowing for uses not allowed as a matter of right in said district under the following conditions:

1. The proposed use shall be an open land type of use and shall not involve the erection of permanent buildings or other permanent improvements and shall be located in an undeveloped area, provided however, that permanent buildings shall be allowed which conform with the zoning in force upon the parcel.

2. The proposed use and the placement thereof upon the land shall be such that it shall not be unsightly to the general public or interfere with the enjoyment or use of neighboring properties.

3. All permanent structures shall comply with all provisions of the district in which the proposed use is located.

4. The Board of Adjustment may append reasonable conditions to any special use permit to the end that the objectives of this ordinance may be upheld.

[¶ 11.] The special use exception may not be used to attack the integrity of the ordinance, but it is available to promote flexibility and growth in narrowly defined circumstances. It contains safeguards necessary to preserve the original intent of the zoning ordinance.

[¶ 12.] The special use permit is designed to allow uses not allowed as a matter of right. Those not allowed as a matter of right are specifically excluded by Section 1–109. We find nothing in the

ordinance which precludes the Board of Adjustment from granting a special use permit for the use proposed here, so long as the applicant satisfies the requirements of Section 2–115.

[¶ 13.] We affirm the circuit court on this issue.

## ISSUE TWO

[¶ 14.] **Whether the decision is supported by sufficient evidence.**

[¶ 15.] The record reveals that the Morris/Blair property is undeveloped, uninhabited farmland, lying east of Lake Oahe, near the Spring Creek and Cow Creek Developments. The land is bounded on the east by State Highway 1804 and on the south by an access road to Spring Creek development, which is also the Hughes/Sully county line. Additionally, the property is nearly enclosed on all sides by neighboring land whose owners support the proposed drag strip.

[¶ 16.] The plans provide that drag strip patrons would enter the area from State Highway 1804. Day visitors would not need to travel through any developed areas to get to the drag strip.

[¶ 17.] All permanent structures must comply with all provisions of the district in which the proposed use is located. Sully County Ordinance § 2–115(3). The Board found that the structures were temporary and therefore were in compliance with the provision. The proposal calls for a 2–inch asphalt mat, 3,500 feet in length. The actual race course would involve 1,320 feet, and the remainder would be used for run-up and deceleration. Morris testified that, if necessary, his construction company could crush and remove the strip in approximately one day. He said that the proposed guard rails could be removed as they had already been used at one or more locations. The concession area, rest rooms and grandstand could be readily removed, and the property restored to farmland if the permit was later not renewed. The Board properly found that the structures were temporary rather than permanent. Additionally, the trial court found that the asphalt strip could be used as a road or driveway, which was an allowable improvement on Ag B land.

[¶ 18.] A special use may not be "unsightly to the general public or interfere with the enjoyment or use of neighboring properties." Sully County Ordinance § 2–115(2). Given the support for the proposal provided by adjoining land owners within one half mile of the site, the Board could properly find that the drag strip would not offend this portion of the ordinance.

[¶ 19.] Much of the controversy involved issues of noise and traffic congestion. According to Wayne McMurtry, retired vice-president for facilities, operations and development for the National Hot Rod Association (NHRA), the strip would only be used for events sanctioned by the NHRA, and many of the cars would be "true sportsman bracket street legal cars," driven to the track by local enthusiasts. He testified that this type of facility would not generate prize money sufficient to attract national participants, particularly those racing fuel dragsters or "funny cars."

[¶ 20.] The Board relied on the testimony of a competent expert in the field and did not base its decision on selfish or fraudulent motives, nor was there any indication of false information. This type of competent evidence is exactly the type envisioned in *Tisdel.*

[¶ 21.] McMurtry told the Board and the audience that most of the noise generated by drag cars would be directed behind the starting line which, in this case, would be south and east toward undevel-

oped land and away from the developed areas. He said: "I'm not going to stand up here and tell you you're not going to hear them. But you're not going to hear them at a level that's any higher than any other traffic going by."

[¶ 22.] In response to the noise concerns, two Board members participated in noise level testing. They concluded that the noise would not be excessive and that certain restrictions could be placed on the permit to minimize noise problems. The Board attached seven conditions to the permit, as follows:

1. Declare that the track will pursue Good Neighbor Policy by regulating sound emissions from the facility by all means technically and economically feasible.

2. Establish a three member Citizens Liaison Committee to assure the communications between residents and track management shall be ongoing. This committee is to impose self-governing curfews or hours of operation.

3. Utilize fast growing and dense vegetation (trees) to further mitigate sound and views over time.

4. Establish engine-testing times. Teams must not work after a determined time in the evenings. No motors to be fired before 8:00 a.m. or after 10:00 p.m.

5. A policy where the larger powered vehicles must be towed to the staging lanes prior to runs and towed back after each run to their respective pit areas. This further reduces times which sound could be generated by insuring that they are moved about by means other than their own power.

6. Publish event dates and operational schedules for each season as early as possible. Insure that all immediate area residents and the liaison committee receive them.

7. Promote muffled cars.

[¶ 23.] The Board considered the extensive development already present in the area and the noise generated by motor boats, jet skis and other recreational vehicles. After considering the nature of the request, its positive and negative features and the applicant's economic stability, the Board, in its collective wisdom, voted 4–1 to issue the permit. We find the evidence sufficient to support the Board's decision.

[¶ 24.] Affirmed.

[¶ 25.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.

[¶ 26.] JOHNSON, Circuit Judge, for ZINTER, Justice, disqualified.